## Fisk *vs.* Newton.

It is a general rule that a common carrier is bound to deliver the goods entrusted to him to carry, personally, to the consignee at the place of delivery: but in certain cases where the transportation is by vessels or boats, notice of the arrival and place of deposit, is sufficient, and comes in place of a personal delivery; and where goods are safely conveyed to the place of destination, and the consignee is dead, absent or refuses to receive, *or is not known and cannot after reasonable efforts be found,* the carrier may discharge himself from further responsibility, by placing the goods in store with some responsible third person in that business, at that place, for and on account of the owner. In such a case, the storehouse keeper becomes the agent or bailee of the owner of the property.

Where the consignee of certain kegs of butter sent from Albany to New-York by a freight barge was a clerk, having no place of business of his own, and whose name was not in the city directory, and who was not known to the carrier, and after reasonable inquiries by the carrier's agent could not be found, it was held that the carrier discharged himself from further responsibility, by depositing the property with a storehouse keeper then in good credit for the owner, and taking his receipt for the same, according to the usual course of business in that trade, though the butter was subsequently sold by the storehouse keeper, and the proceeds lost to the owner by his failure.

Error to the superior court of the city of New-York, upon a judgment of that court, reversing a judgment of the marine court of that city, upon *certiorari.*

Fisk sued Newton, who was the owner of a line of freight barges on the Hudson, known as the New-York and Albany line, in the marine court, as a common carrier, for not delivering four kegs of butter received on one of his barges at Albany, to be taken to the city of New-York. The casks were marked with the name of the plaintiff, and the additional words, " care of H. S. Field, New-York," and arrived at that city November 21, 1842. The defendant's agent in New-York swore, that on the arrival of the butter, he made diligent inquiry for H. S. Field, but could not find any such person. His name was not in the city directory, and he could not hear of him upon inquiry at the stores of several individuals of the name of Field, at which he called. Under these circumstances, the next day after the arrival of the butter, he deposited the same for the owner with

Trafton & Owen, storehouse keepers, who were then in good credit, and took their receipt for the same. In March, 1843, the butter not having been called for, Trafton & Owen caused the same to be sold, and credited the proceeds to the defendant's line of boats, and soon after, and in the same spring, they failed; and when they were subsequently called on, on behalf of the plaintiff, they alleged that the sale was made by the defendant's direction; but there was no evidence to that effect, and it was denied by the defendant's agent. H. S. Field testified that he was a *clerk* in the city of New-York at the time the butter was sent, and had lived there several years. About the time of the shipment, he received a letter from the plaintiff stating that he had sent the butter to him, by the *Oswego* line, and to the care of R. J. Vanderwater, and the witness repeatedly called on Vanderwater at the office of that line, but could hear nothing of the butter. He did not call on the defendant's agent until after he had been into the country and had seen the plaintiff in the summer of 1843, when, being informed by him that it was not sent by the Oswego, but by the defendant's line, he called on the defendant's agent in August of that year, paid the freight and received the storekeeper's receipt, with which he called on Trafton & Owen; but they having sold the butter and failed, nothing could be obtained. There was some conflict in the testimony as to the account which the defendant's agent gave of the butter when called on by Field, but the foregoing facts were not controverted. It was also shown to be the usage of carriers bringing property to New-York by boats, to deposit it in store when the consignee could not be found. The justice of the marine court rendered judgment for the plaintiff for $57,15.

*R. H. Shannon,* for the plaintiff in error, insisted, that the defendant's undertaking was to deliver the property personally to the consignee, and that his liability did not terminate when he deposited it in the storehouse. At all events, he should have given notice to the consignee. If upon suitable inquiry he could not be found, a letter should have been addressed to him through the city post-office, or the property should have been

advertised. If either of those methods had been adopted, the butter would not have been lost. He cited *Golden* v. *Manning*, (3 *Wils.* 429;) *Hyde* v. *Trent and Mercy Nav. Co.*, (5 *T. R.* 389;) *Garside* v. *The same*, (4 *id.* 581;) *Gibson* v. *Culver*, (17 *Wend. R.* 305;) *Story on Bailm.* 343, 4; *Ostrander* v. *Brown*, (15 *John. R.* 39;) *Hemphill* v. *Chener*, (6 *Watts & Serg.* 62.)

*C. Van Santvoord* insisted, that as Field, the consignee, could not be found after diligent inquiry, the defendant had a right to deposit the property with a storehouse keeper, who thereupon became the agent of the owner, and that the carrier's duty was fully discharged if he selected a responsible house to take charge of it; which he insisted was done in this case. He cited *Mayell* v. *Potter*, (2 *John. Cas.* 371;) 2 *W. Black.* 916; *Van Santvoord* v. *St. John*, (6 *Hill's R.* 157;) *Phillips* v. *Earle*, (3 *Pick.* 182.) He said that, in the cases relied on by the plaintiff's counsel, the consignee was either known to the carrier, or had a known place of business at the place where the property was to be delivered, by which, and the address accompanying the property, he could be readily found.

*By the Court*, JEWETT, J. It is well settled that, *prima facie*, a *common carrier* is bound not only safely to convey, but safely to *deliver* a parcel which he has undertaken to carry, at the *place* to which it is directed, to the consignee personally. (*Gibson* v. *Culver*, 17 *Wend.* 305, *and the cases there cited.*) Personal delivery, however, is sometimes dispensed with, in the case of carriers by ships and boats. *Notice* given to the consignee of the arrival and place of deposit, comes in lieu of personal delivery. (2 *Kent's Comm.* 605, 3d ed.) So when goods are safely conveyed to the *place* of destination, and the consignee is dead, absent, or refuses to receive, or is not known and cannot after due efforts are made be found, the carrier may discharge himself from further responsibility, by placing the goods in store with some responsible third person in that business, at the place of delivery, for and on account of the owner.

When so delivered, the storehouse keeper becomes the bailee and agent of the owner in respect to such goods. In this case, the wharf was the *place* of delivery, and H. S. Field, the person to whom, from the directions of the plaintiff, the goods were to be delivered. Field was unknown to the carrier. He did not call at the place of delivery for the goods. The consignor had omitted to inform the defendant of the particular residence of Field, or of his occupation or place of business. He was a mere clerk, having no place. of business, his name not in the city directory, and was not discovered by the carrier although reasonable efforts were made to find him. The consignor had misinformed Field as to the line by which the goods had been sent, and the person to whose care they were directed to be delivered ; by reason of which Field did not receive the goods. The defendant put the goods in store with a responsible third person, for and on account of the owner, according to the usage of the trade at that place under such circumstances. Then the goods are lost, through the insolvency of the storehouse keeper, occurring several months after the delivery. I think the risk of the carrier, from the facts in the case, ceased on the delivery of the goods in store, and that the plaintiff failed in his action.

The judgment of the superior court must therefore be affirmed.