THE CHICAGO AND ROCK ISLAND RAIL ROAD COMPANY, Plaintiff in Error, *v.* WILLIAM G. W. WARREN *et al.*, Defendants in Error.

ERROR TO COOK COUNTY COURT OF COMMON PLEAS.

A party delivered to the Rock Island Rail Road Company 1,716 pounds of rags, which were in sacks, at Joliet, to be transported to Chicago; the company offered to deliver 500 pounds of rags at Chicago, which were loose, and outside their depot: *Held*, that this was no delivery of a part, and that the company was liable for the price of the whole, unless it was shown that the rags tendered were a part of those delivered, and that they were in a proper condition.

A shipper is not bound to take a remnant of his goods, in whatever condition they may be identified and offered to him.

Common carriers must deliver to the owner or consignee, and they cannot relieve themselves of their liability until the goods are delivered to the owner or consignee, or to a warehouseman, for storage; and there must be some open act of delivery, to change the liability of a carrier to that of a warehouseman.

The proof of this rests upon the carrier.

If a rail road carrier stores the goods transported by him in the car which he used for the purpose, he must show that the car has been separated from the train, and placed in the proper or usual place for storage, and in the care of a proper person, to release his liability.

The responsibility of the carrier must continue until that of some other person begins, and the fact of the change must be shown by the carrier.

THIS was an action of assumpsit, brought by appellee against the appellant, to recover the value of a quantity of rags, sent from Joliet to Chicago, which were not delivered at Chicago. Plea, the general issue.

The record presents the following state of facts:

That the plaintiffs below, (who are the appellees in this court,) by their agent, delivered to the defendants, at Joliet, in the State of Illinois, a quantity of rags, weighing *seventeen hundred and sixteen pounds,* for carriage by the defendants upon their road, from Joliet aforesaid to Chicago, and delivery to the plaintiffs at Chicago; and that the defendants, by their agent at Joliet, delivered to the agent of the plaintiffs a receipt for the *above mentioned* quantity of rags, to be carried upon defendants' road from Joliet to Chicago, and to be delivered at Chicago to the plaintiffs.

That the said rags, when delivered at Joliet for carriage, as aforesaid, *were all tied up securely in bags.*

That, some days afterwards, the plaintiffs, by their agent, went to the depot of the defendants in Chicago, and demanded the rags in question, and that the agent of the defendants pointed out to the plaintiffs' agent some rags, *lying loosely outside of the defendants' depot, and out of the bags,* which the agent stated were the rags delivered by plaintiffs, at Joliet, for carriage. That the rags so shown to plaintiffs' agent amounted to about *five hundred pounds in all.*

That the plaintiffs declined to accept the said rags so shown them, as the rags shipped upon defendants' road at Joliet.

That afterwards, the plaintiffs again applied to the defendants at Chicago for said rags, and were informed by defendants' agent that they were not at defendants' depot, but had probably been sent, by mistake, with other rags, to the house of a firm in Chicago, for whom defendants had carried other rags.

That plaintiffs then applied to said firm for their rags, and were informed that the said firm had not seen them, and had not even received all the rags shipped by themselves upon defendants' road, for carriage. thereupon.

That the plaintiffs then again applied to defendants for their rags, and were informed that the same must be lost, as they could not be found, or words to that effect.

The defense made is, that the delivery of rags, as proven by defendants, to plaintiffs at Chicago, was a delivery sufficient to release them from liability as common carriers, and that, at least, it was a delivery in so far as the five hundred pounds were concerned, and that the court erred in rendering judgment for the plaintiffs below, for the full value of the rags by them delivered to defendants at Joliet.

This cause was submitted to J. M. Wilson, Judge of the Cook County Court of Common Pleas, without the intervention of a jury, who gave judgment for plaintiffs below, for the value of the rags shipped from Joliet. The cause was hea ᵗₜt November term, 1854.

Judd and Frink, for Appellants.

Hervey and Clarkson, for Appellees.

Scates, C. J. The evidence very clearly shows the delivery, by defendants, of 1,716 lbs. of rags, put up securely in bags, at Joliet, to the plaintiffs, to be carried as common carriers by them, and delivered at Chicago.

On demand of the rags at Chicago, plaintiffs offer some 500 lbs. of rags, lying loosely about outside their depot, which were refused, and this suit is brought to recover the value of the whole lot.

I can see no grounds for the defense, neither in the facts nor the principles of the law regulating their liability as common carriers. They show that the bags were old and tender of thread, that the goods were not weighed at either end, that they were billed as a lot of rags, and tallied out as such at the place of destination. But how this can acquit them of a responsibility to carry safely, and deliver the goods, I am not able to perceive. The ground assumed is, that the tender, or pointing out the loose rags, was a delivery *pro tanto*, and discharges their liability as common carriers to that extent. I do not recognize this as presenting the first feature of a delivery.

An offer to deliver 500 lbs. of rags, without showing them to be the same rags, and in such condition, is no delivery; nor will it be regarded as an offer to deliver.

The defendants were entitled to their own rags. The bags were destroyed, as a means of identification, and plaintiffs have not shown that these were defendants' rags, even had the condition been no objection to receiving them.

Defendants were entitled to their own rags, and were not bound to take other rags in their stead.

But the condition of the rags was a substantial objection. I do not pretend that every failure to carry safely and in like good order, as received, will subject a common carrier to liability for the full value, and compel him to answer as a purchaser. Nor is a shipper bound to take any and every remnant of his goods, in whatever condition it may be identified and offered to him, short of total destruction. There is a medium, defining their mutual rights in this respect.

The responsibility of a common carrier does not end or change into that of a warehouseman, by mere delivery at the usual dock or wharf of a vessel, landing of a steamer at the way station, or railroad at its way station or final depot. There must be such actual delivery as satisfies and fulfills the contract for carriage and delivery, to the owner or consignee. The carrier's liability cannot end until that of the owner's, consignee's or warehouseman's begins, and it can make no difference that the carrier, by discharging his liability as such, assumes the new relation of storer. Merely reaching the end of the voyage or transportation, and delivering the goods out of the vessel or vehicle in which they were carried, will not fulfill the one duty, nor create the other. *Craw et al.* v. *Clark et al.*, 15 Ill. R. 564. There must be an actual or legal constructive delivery to the owner or consignee, or to a warehouseman for storage.

Railroad companies may, and doubtless do, act in relation to the same goods, both as common carriers and warehousemen, and these relations and liabilities are very different in the strictness and extent of responsibility. We cannot sanction the idea for a moment, that the duties and obligations of carriers, end the instant a train stops, either at the way or final station of its route. This would open the door to endless frauds, thefts and destruction or loss by the way, and a change of the carrier's liability into that of mere storage, without any possibility of the owner proving that they did not arrive safe. The carrier's servants employed in the transportation, are seldom the same charged with the care and custody of the same articles, when and while in their charge on storage. But even had the same servant charge of the goods for the carrier in both characters, and under both liabilities, there should be some open act of delivery, capable of proof of this change of relation and liability. This proof must, of necessity, rest upon the carrier. If in the course of the particular line of transportation, the carrier stores at the station in the same car in which goods are transported, he would be able, and ought to know that the car had been separated from the train, and placed in a proper, or its usual station for storage, and put in charge of the proper person. Goods may not be thrown down in a station house, or on a platform at their destination, in the name and nature of delivery. The responsibility of the carrier must last until that of some other begins, and he must show it. The case before us is a good illustration. The shipping of the goods is shown, but their transportation to and arrival at Chicago, is nowhere in the record to be found. The plaintiffs prove that the " rags were billed on the freight list" " as a lot of rags, and were tallied out at the depot" in Chicago. How, when and where,

and how many of them ? The record answers some of these inquiries. They were thrown loosely outside the depot, (a small part only) and before the defendant could reach the depot to receive them, after notice, supposing those shown to be the same that were shipped.

. See *Ostrander* v. *Brown and Stafford*, 15 John. R. 39; *Chickering* v. *Fowler*, 4 Pick. R. 371 ; *Hyde* v. *Trent and Mersey Nav. Co.*, 5 Term R. 387 ; Story on Bailments, Secs. 509, 538 to 542 ; Angell on Carr., Secs. 282 to 288; 2 Kent Com. 604 and 605 ; *Hill* v. *Humphreys*, 5 Watts and Serj. R. 123 ; *Gibson* v. *Culver and Brown*, 17 Wend. R. 305.

Such a delivery is no delivery at all in law, according to the above and numerous other authorities.

*Judgment affirmed.*