JOHN HIRSCH v. STEAMBOAT QUAKER CITY.

(No. 6,121.)

1. The law has long been settled that when goods have reached their destination, and in the ordinary course of business are stored for their protection, or to be afterward forwarded to another place, the liability of the carrier ceases, and that of the warehouseman only exists.

2. When a sufficient time has elapsed after the arrival of the vessel, and the landing of the freight on the usual wharf, and the consignee, if notified, does not appear, or if he is not a resident of the port of destination, and has no known correspondent or agent, the carrier may put the goods in a warehouse, and will only be held, as a depositary, to ordinary care.

SPECIAL TERM.—The plaintiff shipped on board the steamboat Quaker City, two boxes of merchandise, to be transported from Cincinnati to St. Louis. By the bill of lading given by the clerk, the property was to be delivered to the plaintiff on its arrival, but no place in St. Louis was designated, and no person named to whose care it was addressed, if the consignee should be absent.

On the arrival of the vessel at St. Louis, the goods, not being called for by the consignee, were detained by the captain till the eve of her departure, when they were deposited in the warehouse of a commercial agent, of established reputation for prudence and responsibility.

The consignee resided in Cincinnati, and, it was in proof, was not in St. Louis while the boat remained there. On his arrival, however, some days after her departure, he inquired for his property at several warehouses, but could not find it; and, it would seem, by some oversight or unfairness

of the warehouseman, the boxes have not yet been delivered.

The bill of lading is dated in October, 1853. At that time the boat was owned and navigated by Captain Shrunk, who sold her in the autumn of 1855, to her present owner.

When she was seized in the present action, her former owner had no interest in the boat, and there is no proof that his vendee had any notice of the plaintiff's claim when he acquired his title.

*Taft & Perry,* for plaintiff.

*Lincoln, Smith & Warnock,* for defendant.

STORER, J. Upon the facts in this case we are asked to hold that the plaintiff may charge the boat with the loss of his merchandise.

If there had been a performance of the contract, by the delivery to the warehouseman, at St. Louis, it is clear, the plaintiff has no remedy against the boat. The law has long been settled that when goods have reached their destination, and, in the ordinary course of business, are stored for their protection, or to be afterward forwarded to another place, the liability of the carrier ceases, and that of a warehouseman only exists.

This was first held by Lord Kenyon, in *Garside* v. *Trent Nav. Co.,* 4 D. & E. 581, and afterward affirmed *in re Webb et al.,* 8 Taunton, 443.

"And if the consignee is dead, or absent, or refuses to receive the goods, or is not known, and can not, after due efforts, be found, the carrier may discharge himself from further responsibility by placing the goods in store, with some responsible third person at the place of delivery." *Fisk* v. *Newton,* 1 Denio, 45, 47.

Judge Redfield, in his late excellent work on the law of railways, 252, lays down the rule as follows : " When a sufficient time has elapsed, after the arrival of the vessel, and the

landing of the goods at the usual wharf, and the consignee does not appear, the carrier may put them in warehouse, and will only be liable, as a depositary, for ordinary neglect;" and this view is taken by the supreme court of Massachusetts, in 10 Metcalf, 472, *Thomas* v. *Boston and Providence Railway;* 1 Gray 263, *Norway Plains Co.* v. *Boston and Me. Railroad;* 11 Cushing, 70, *Lichtenhein* v. *Boston and Providence Railroad;* so also in Illinois, 16 Ill. 502, *Chicago and Rock Island Railway* v. *Warren;* in Michigan, 2 Mich. 538, *Michigan Central Railway* v. *Ward;* in New Hampshire, 32 New Hamps. 527, *Moses* v. *Boston and Maine Railway.*

The reason of the doctrine established by these cases is very obvious. The carrier having terminated his voyage, has the right to employ his vessel for the transportation of new freight; if the consignee does not appear to claim his goods, when required, or if he is not a resident of the port of destination, and has no known correspondent or agent, with whom the carrier can confer, it can not still be the duty of the carrier to retain the goods, and thus change his boat into a warehouse; besides, he has earned his freight already, and ought not to be required to do more than to leave the property under the charge of some responsible man of business. More than this he should not be compelled to do, less than this would necessarily make him liable for neglect of duty.

It is said the carrier should always notify the consignee of the arrival of the merchandise, more especially when it is left on storage. As a general rule, this we may regard as not only proper, but just to all parties concerned; but, we must not forget, the law never requires a vain thing to be done. When there is no consignee to notify, and no one to represent him at the place of delivery, the necessity of the rule ceases. There was no such ceremony performed in this case, and none, we think, could be required. The shipper was informed, so soon as he made inquiry, where his property was deposited, and with the depositary in St. Louis, we suppose, rested all further liability, where he had taken and

stored the goods; he is unquestionably liable to the plaintiff, even at the present day, unless some statutory bar has been interposed to the contrary.

Whether there is any liability against the former owners of the boat, for any alleged neglect on their part after the freight was received and stored, we need not now decide. It does not, in our opinion, any longer exist upon the bill of lading; that obligation being fulfilled, the boat can not be charged with any subsequent omission of duty on the part of her owners, officers, or crew.

This view of the case dispenses with the necessity of determining whether the liability of the vessel would remain after a sale to an innocent purchaser, and we defer the expression of any opinion on that feature of the case.

We have no doubt that the testimony establishes the fact of the delivery to the warehouseman in St. Louis; and that he was a proper person with whom to place the freight for safe keeping. We are equally clear it was the right, as well as the duty, of the carrier to store this freight. On the case thus found, judgment is rendered for defendant.

Judgment for defendant.