Rowland v. Miln.

Judgment affirmed.

---

## PHILIP ROWLAND AND OTHERS *v.* GEORGE MILN.

A common carrier undertakes to deliver the goods entrusted to him under all events, unless they are lost by the act of God, or the public enemies; and he can maintain no action for freight, unless he has fully performed his contract. Proof of delivery to the consignee is essential to the carrier's action for freight.

Where the transportation is by water, the proper place of delivery is on the wharf, upon due notice to the consignee of the time and place of delivery. What is sufficient notice—considered.

If the consignee is absent, dead, or cannot be found; or if he neglects or refuses to receive the goods; the carrier, to discharge himself from liability, may place them in store with a responsible person, at the risk, cost, and charge of the owner. He cannot abandon the goods upon the wharf. If he does so, he is responsible to the owner for their loss or injury.

If the carrier relies upon a local usage as controlling the question of sufficiency of delivery, such local usage must be affirmatively established by proof at the trial. The court will not assume that a usage exists in contravention of the well established general rule in respect to the duties of carriers by land or water, upon the authority of a single case, in which such a usage has been proved and acted upon.

A carrier cannot excuse the non-performance of his contract to deliver, by showing that he was prevented from making the delivery by an illegal and unauthorized act of a public officer. If he relies, as an excuse for not delivering, upon the inter-

ruption or prohibition of a landing and delivery of goods by some person or power invested with legal authority to prohibit their landing or delivery, he must establish that the person or power, so interrupting or preventing a delivery, had legal authority so to do.

Neither a customhouse inspector, nor the collector of the port, has any authority to send goods to the public store, after the duties upon them have been paid, and a permit to land them has been given to the consignee.

When goods are taken out of the custody of a carrier by a public officer, upon the false assumption that he had the right so to take them, such officer is responsible to the carrier for any loss or injuries he may sustain by reason of his consequent inability to complete his contract and deliver the goods. And, in such a case, it is the duty of the carrier to follow the property, and see that it is duly delivered to the consignee; or, if he is unable to obtain possession thereof, so as to make such delivery, then it is his duty to hold the person, who has taken the goods out of his custody, responsible for the consequences.

APPEAL by defendant from a judgment of the First District Court. This action was brought to recover $43.23, freight on ninety-eight casks of ale. On the 17th of January, 1858, the ship Harriet Hoxie arrived in this port, having on board, among other cargo, a consignment of ninety-eight casks of ale to the defendant. On the 22d she commenced unloading, and on the 23d the ale was landed. No notice of its arrival was proved to have been given to the defendants, except so far as such notice might be deduced from the facts hereinafter stated.

On the 17th of January a permit was given to the defendant, by the collector of the port, reciting that the duties on the ale had been paid or secured, and giving permission to land the same. On the 23d of January a general order was issued from the customhouse, directing the inspector on board the Harriet Hoxie to send to the public store all packages, when landed, for which no permit or order should have been received by him. Fifty casks of the ale were sent to the public store, under this order, before the defendant presented his permit—the other forty-eight casks were delivered to, and received by, him. The inspector testified that a person, representing himself to be the defendant's cartman, and who was, he thought, the cartman that took the forty-eight casks, asked him for a certificate of the delivery of the fifty casks at the public store; and that he made out such a certificate, and

left it in the cabin for him. It further appeared that a bill for the freight claimed was presented to the defendants, by the agents of the ship, the first or second day after her arrival, at the foot of which bill was this memorandum : "Vessel at pier 18 East river. General order. Jan. 23, 1859." The defendant offered to prove that his cartman went several times to the vessel to get the freight with the permit, before the ale was landed, but did not exhibit it, as the ship was not discharging. The evidence was objected to, and was excluded. Judgment was rendered for the amount of freight claimed, and the defendant appealed.

*Beebe, Dean & Donohue*, for the appellants.

*Benedict, Burr & Benedict*, for the respondent.

By the Court, DALY, First Judge.—Before the plaintiffs could maintain an action for the freight upon the ninety-eight barrels of ale, they were bound to show that they had delivered them to the defendant, who was the consignee named in the bill of lading. *Forward* v. *Pittard,* 1 T. R. 27 ; *Harril* v. *Owens,* 1 Dev. & Bat. 273. Common carriers by land or water are bound to deliver the goods, entrusted to them to carry, to the consignee personally at the place of delivery. *Gibson* v. *Culver,* 17 Wend. 305. In this case, it was the duty of the plaintiffs to have notified the defendant that the goods would be delivered on the wharf at a time specified; and even then, unless he should desire them to be left on the wharf until he sent for them, or should otherwise assume the control and custody of them, as was the case in *Twiggan* v. *Duff,* (1 M. & W. 174), it would be their duty to store them with some responsible person for and on account of the owner, if the consignee should neglect to send for them, or refuse to receive them. They would not be justified, in such a case, in abandoning the goods upon the wharf; and, if they did so, would be liable to the owner for their loss or injury. *Ostrander* v. *Brown,* 15 Johns. 39 ; *Selwyn* v. *Holloway,* 1 Ld. Ray. 46 ; *Wardell* v. *Mowryllian,* 2 Esp. R. 693 ; *Twiggan* v. *Duff,* 1 M. & W.

174; *Eagle* v. *White*, 6 Penn. R. 123.  It was held, in *Fisk* v. *Newton*, (1 Denio, 45), that, where the transportation is by water, the proper place of delivery is on the wharf, upon due notice to the consignee of the time and place of delivery ; and that, if the consignee is absent, dead, or cannot be found after due efforts, or if he refuses to receive them, the carrier, to discharge himself from responsibility, must place them in store with a responsible person, at the risk, cost, and charge of the owner.  In the case of *The Grafton* (1 Olcott, 43,) there was proof that, by the established usage at this port, the landing of the goods upon the wharf, upon due notice to the consignee of the arrival of the vessel, and of the time and place of the delivery of the goods, was a sufficient delivery.  So far as the question of delivery affected the decision of that case, the court was bound, upon this proof, to assume the existence of such a usage, and that the parties contracted with reference to it.  In the case below, there was no proof of any such usage, and I am not willing to take the decision in the case of *The Grafton* as authority for assuming, as matter of law, that a usage prevails at this port in contravention of the well established rule in respect to the duties of carriers by land or water— a usage that would be attended with great inconvenience in many cases, and which would justify the carrier in abandoning the property upon the wharf, if the consignee, after notice, neglected or refused to receive it.  I should want something more than the proofs presented in a single case, to recognize, as matter of law, that such was the general and universal custom at this port. *Schooner Reeside*, 2 Sumn. 567, per STORY, J.; *Turney* v. *Wilson*, 7 Yerg. 340 ; *Woodruff* v. *Merchant's Bank*, 25 Wend. 673 ; *Id.*, 6 Hill, 174; *Rushforth* v. *Hadfield*, 7 East, 225; *Gibson* v. *Culver*, 17 Wend. 308.  In the case below, it did not appear that the defendant was notified that the casks of ale would be landed at the wharf on the 23d of January, except so far as the justice might be warranted in inferring that fact from a memorandum at the bottom of the freight bill, and from a cartman having taken forty-eight of the casks, the receipt of which the defendant acknowledged.  Fifty casks were landed on that day, and, after remain-

ing upon the wharf for two hours, the customhouse inspector sent them to the public store. On the 17th of January, six days before, the defendant paid the duties upon the ninety-eight casks, and obtained a permit to land them. He offered to show that his cartman went with this permit to the vessel on the 18th, and again on the 21st, but did not exhibit it, as the vessel was not discharging; but the justice excluded the evidence. The same cartman, it would seem, went again on the 23d. The permit was shown to the customhouse inspector, but it was after he had sent the fifty casks to the public store, and the cartman brought away the remaining forty-eight casks, of which the defendant has acknowledged the receipt. If the plaintiffs had notified the defendant that they would deliver his goods at the wharf on that day, or that they had commenced to deliver the casks, it was a simple matter for them to show it, either by proving the fact by the person who gave the notice, or by calling the defendant as a witness and interrogating him respecting it. They were bound to make out their case, by establishing that they had discharged themselves from all responsibility by a due delivery of the ninety-eight casks, before they could recover for their carriage; and, in such an action, the justice was not warranted in inferring that the defendant had due notice of the time and place of delivery, upon evidence so loose and uncertain. If there was not, then, sufficient evidence to warrant the conclusion that the defendant had received due notice, it reduces the case to a landing upon the wharf of the ninety-eight casks, forty-eight only of which the defendant acknowledges that he has received. To entitle them to recover freight, they were bound to show that he had received the other fifty, or that they had duly delivered them. A common carrier undertakes to deliver under all events, unless the goods are lost by the act of God, or the public enemies; and he can maintain no action for freight, unless he has fully performed that contract. The plaintiffs claim that they have performed as fully as they could, and that they are not answerable for the act of the customhouse inspector in sending the first fifty casks to the public store. It appears that on the day when the casks were

landed, that is, on the 23d of January, the collector of the port issued a general order, to the customhouse inspector, to send all packages which might be landed from the vessel, for which no permit had been obtained, to the public store; and that the inspector sent the fifty casks in question to the public store, before he received the permit from the defendant's cartman. The inspector says that, after he had sent them, a person, representing himself as the defendant's cartman, and who took away the remaining forty-eight casks, asked him for a certificate of the delivery of the fifty casks at the public store, and that he made out such a certificate, and left it for the cartman in the cabin of the vessel. The demand, by the cartman, of this certificate, and the leaving it for him in the cabin, did not establish that the defendant had assumed the control of the property, or recognized the receipt and due delivery of it to him. In *Twiggan* v. *Duff*, (*supra*), notice was given to the consignee, on the day when the goods were landed on the wharf, that they had arrived, and the consignee's clerk, late in the afternoon of that day, signed, in the carrier's book, an acknowledgment that the goods had arrived for the consignee; and it was further shown that, upon former occasions, the consignee had notified the carrier to let the goods remain on the wharf until he sent for them; it was held that this was sufficient to submit the question to the jury, whether the consignee had not, by these acts, discharged the carrier, and received and accepted the goods. Here, then, was proof of previous deliveries of goods, in this way, by the consignee's direction, together with a written acknowledgment by the consignee's agent, after the goods were landed from the vessel, that they had arrived for him. This is a very different case from the leaving, by the inspector, in the cabin of the vessel, a certificate to the effect that he had sent the goods to the public store, which, for all that we know, may never have reached the defendant or his cartman, or have proved effectual to secure the due delivery of the property. The fact that the fifty casks were sent to the public store by the inspector, under a general order, before he had notice of the permit of the defendant, will not excuse the carrier,

nor absolve him from his contract to deliver.   If the carrier relies, as an excuse for not performing, upon the interruption or prohibition of a landing and delivery of goods by some person or power invested with legal authority to prohibit their landing or delivery, he must establish that the person or power, so interrupting or preventing a delivery, had legal authority to do so, (*Evans* v. *Hutton*, 5 Scott N. R. 670); while here, neither the inspector nor his principal, the collector of the port, had any authority to send these fifty casks to the public store, the duties upon them having been paid, and a permit given to the defendant for the landing of them.   Act of Aug. 6, 1846 ; Act of March 2, 1799, § 49 ; Act of March 3, 1849 ; Dunlop's Laws U. S., p. 1106–216, 1214.   It was held in *Barker* v. *Hodgson*, (3 Maul & Sel. 267), which was an action for breach of contract against the charterer of a ship who had covenanted to send a cargo alongside at Gibralter, that it was no answer to the action that a malignant and infectious disorder prevailed at Gibralter at the time, in consequence of which all public intercourse or communication was interrupted and prohibited by the public and established law of the place.   In *Hill* v. *Idle*, (4 Camp. 327), which was an action against the consignees for damages for not taking away certain hogsheads of wine within a reasonable time after the arrival of the vessel, after notice, it was held to be no answer that the wine could not be landed without an order from the treasury, and that the defendants, though they had used the greatest exertions and diligence, could not obtain the permit for landing them until nearly a month after the landing of the other part of the cargo. These cases show to what strictness parties are held, as to their liability upon contracts.

I have treated this case as one in which there was no certain or satisfactory evidence that the defendant had notice of the time and place of delivery ; but, even if the plaintiffs had shown that they had given due notice, it would not have relieved them from their responsibility for the non-delivery of the fifty casks.   When these casks were sent to the public store by the inspector, they were in the custody of the plaintiffs.   It has been shown that if

the consignee, after notice, neglects or refuses to send for the goods, the carrier is still bound to take care of the property. When the casks, therefore, were landed on the wharf, it was their duty, whether they had notified the defendant or not, to look after them ; and, if they were taken out of their custody by the inspector, upon the assumption that he had the right to send them to the public store, the inspector, or the collector if he directed the act, are responsible to the plaintiffs for any loss or injury they may sustain by their inability to complete their contract; or, at least, the duty was upon the plaintiffs, when the casks were wrongfully sent to the public store, to follow them, and see that they were duly delivered to the defendant; and, if they could not get the property, so as to make due delivery, to hold the inspector, or whoever had taken them out of their custody, responsible for the consequences.    It was held, in *Goslin* v. *Higgins*, (1 Camp. 451), that the wrongful seizure of the goods by revenue officers, at the port of delivery, for a supposed violation of the revenue laws, was no answer to an action by the shippers, against the owners of the vessel, for the non-delivery of the goods.   Lord ELLENBOROUGH said that the owners of the vessel had an action against the officers who had wrongfully taken the goods, but that the shippers could look only to the master or owner of the vessel.

The plaintiffs, having failed to show that they had delivered the fifty casks to the defendant, or that he had received them, could maintain no action for the freight; and the judgment must be reversed.

Judgment reversed.