WILLIAM C. BROWNING *and others v.* THE LONG ISLAND RAILROAD COMPANY.

The obligation of a common carrier to notify the consignee of the arrival of goods, and of the place of their deposit, and to safely store them after arrival if the owner cannot be found, can be varied only by an express contract, or by a uniform and well-known usage establishing a mode of delivery in certain cases, or at particular places, in conformity with which the parties may be presumed to have contracted.

On the trial of an action against a railroad company for the loss of goods transported by it, it appeared that the servants of the company had placed the goods upon an open and exposed platform at the place of destination, from which they were stolen, no notice of their arrival having been given to the consignee. The defendant offered to show that, by a well known and long established custom of the company, goods were deemed delivered when safely deposited at the platform of the station; and were considered, by the custom and printed rules of the company, to be thereafter at the risk of the owner. *Held,* that the offer was properly refused, on the ground that if such a custom were admissible, it would not have been available, as the goods in this case were not " safely deposited " at the platform, without which no foundation was laid for the proof. *Held further,* that it was proper to exclude an offer to show that where freight was required to be paid for in advance, as in this case, it was the well known and long established usage for the shipper to notify the consignee of the shipment of the goods, and for the consignee to come for his goods without notice of their arrival by the company; for if such a custom prevailed, it would not excuse the defendant for the want of proper care until the consignee could come an

get his goods; nor could such evidence be material in any case, it seems, unless the defendant could show that it was through the shipper's negligence in not giving notice, or through that of the consignee in not acting upon it, that the property was lost or injured.

A regulation or usage of a railroad company requiring all claims against it for damages, by reason of loss or injury to goods transported by it, to be made within ten days after the delivery at the station,—*Held*, unreasonable; and that an offer to prove it was properly rejected.

APPEAL by the defendants from a judgment of the Marine Court at general term.

This action was brought to recover the value of certain goods transported by the defendants. On the 25th day of August, 1864, the plaintiffs shipped by the defendants' road one case of clothing directed to " C. W. Collyer, Hicksville," which was delivered, with other goods, by the defendants' servant upon the platform at Hicksville, on the 27th day of August, in good order and condition. The defendants did not notify Collyer of the arrival of the goods; but he was informed by his brother that they were at the station two days after their arrival, and going for them, found that the case had been broken open, and part of the goods stolen. A short time before, the freight and station house of the defendants at that station had been burned. On the trial, before Justice Hearne, without a jury, the defendants moved for a dismissal of the complaint on the grounds :

*First.*—That the plaintiffs have given no legal evidence of the value of the goods.

*Second.*—That it appeared, by their own showing, that the goods in question had been delivered, as required by the allegations of the complaint.

*Third.*—That the mere fact of the breaking open and stealing of the goods, after the delivery at Hicksville station, does not in itself fasten any liability on the defendants.

The court denied the motion, and the counsel for the defendants excepted. The justice gave judgment for the plaintiffs.

*S. B. Noble*, for appellants.

*A. Prentice*, for respondents.

BY THE COURT.—DALY, F. J.—The plaintiffs delivered to an agent of the defendants a box containing materials cut, with the trimmings, for the making of army clothing, marked " C. W. Collyer, Hicksville." Hicksville is one of the regular stations upon the defendants' road. It contains a store and a blacksmith's shop, close to the railroad track, with a number of private houses and stores about it. The defendants had had there a freight house, a ticket office, and station house, all of which had been destroyed by fire a short time before this box was received for transportation. The freight house had been used for storing freight left at the station, but the company had had no freight agent there. Parties came to the station and got their goods, which were sometimes put in the freight house; and when goods were brought there to be sent by the cars, the ticket agent, it would seem, took the charge of them, and put them on the cars.

The plaintiffs' box was received in good order, and it was delivered in the same state, by the defendants' conductor putting it, together with other goods, upon the platform at the station. No notice of its arrival was given by the defendants to the consignee. Two days after the box was delivered, as above stated, the consignee heard from his brother that it was at the station; and upon the same day he went there, and found the box, which had been left during all this time exposed upon the platform, broken open, and the materials for the making of thirty-two pairs of pantaloons been taken from it.

These facts having been proved, the defendants offered to show that, by a well known and long established custom of the defendants, articles were deemed delivered when safely deposited at the platform of the station, and were considered and deemed, by the custom and the rules and regulations of the road, to be thereafter at the risk of the owner. If any such custom could have been proved, it would not have been available, as this box was not safely deposited at the platform, but was left there openly exposed, subject to be injured by the elements, or to be rifled, as it was, by thieves. Such a custom, if it had arisen and was universally known, must have pre-

vailed, in connection with the existence there of a freight house, for the preservation and security of property, until the owner or consignee could come and take it away. While the freight house was there, it could be " safely deposited at the platform ;" but the freight house was destroyed by fire about three weeks before this, and as that security for a safe deposit did not then exist, it was incumbent upon the defendants, before they could relieve themselves of their liability as common carriers, to find some other means whereby the goods could be secure and safe from depredation until they could be removed.

The defendants further offered to show that, by a long established usage of the road, and in accordance with its printed rules and regulations, posted conspicuously at the place for receiving and discharging freight, it was not incumbent upon the defendants to notify the consignee ; but that, when articles were deposited *safely* upon the platform of the station to which they were consigned, they were, by the usage, and by these rules and regulations, at the risk of the owner. To which offer it may be answered, as above, that this box was not " deposited safely," without which no foundation was laid for the proof of any such custom.

The defendants then offered to show that, when freight was required to be paid in advance, which was the case here, it was the established usage for the shipper to notify the consignee of the shipment of the goods ; and when the consignee lived at a distance from the station, that he was to come for the article consigned to him, without notice from the defendants. If such a usage prevailed, it would not excuse the defendants for the want of proper care until the consignee could come and get the property; nor could such evidence be material in any case, unless the defendants could show that it was through the shipper's negligence in not giving the notice, or through that of the consignee in not acting upon it, that the property was lost or injured—which was not attempted to be done in this case.

The conductor was asked if the defendants had any rules, regulations, or conditions, as to the delivery of freight along the line of their road, and if they were posted up conspicuously

in every place where freight was received and delivered. It was entirely immaterial whether they had or not, or whether the plaintiffs knew it or not. It is well settled that common carriers cannot limit their liability by any such means. They can do it only by a special contract, expressly entered into with the person whose goods are carried (*Dorr* v. *The New Jersey Steam Navigation Co.* 11 N. Y. 485; *Hollister* v. *Nowlan,* 19 Wend. 234).

The conductor was asked further, if there was any custom, or usage, requiring all claims for damages by reason of loss to be made within ten days after delivery at the station; and if the rules, regulations, and conditions of the defendants, conspicuously posted at the place for receiving and delivering freight, required such claims to be made within ten days after loss. Though the words, custom and usage, are here employed, it is evident, when the whole is taken together, that it was an offer to prove a usage or regulation of the defendants, and not a long established usage of that general nature, which would be binding upon all doing business with the road. As a regulation, it would be unreasonable, as more than ten days might elapse before a party knew of the loss of his property.

It is the duty of a common carrier to notify the consignee of the arrival of goods, and of their place of deposit; and, after they have reached the place of destination, to secure or store them safely, if the owner cannot be found (*Rowland* v. *Miln,* 2 Hilt. 150; *Fisk* v. *Newton,* 1 Denio, 45). This general obligation may be varied by an express contract between the parties; or a uniform and well known usage may be shown, establishing a mode of delivery in certain cases, or at ·particular places, in conformity with which the parties may be presumed to have contracted (*Gibson* v. *Culver,* 17 Wend. 305). But the offers made in this case were not of this nature.

The plaintiff Browning was competent to prove the value of the property lost. He was in the clothing business, and engaged largely in the manufacture of clothing. The articles lost were the materials for making up thirty-eight pairs of army pantaloons. He knew what the cloth and other materials cost,

what it would have cost to make them up, and he knew the price the Government were to pay for them when manufactured. This was amply sufficient to entitle him to give testimony as to the value of the articles lost.

The judgment should be affirmed.