George Andrews, J.,
delivered the opinion of the Court.
This action was brought before a magistrate — the plaintiff, Kremer, seeking to recover damages against the express company for their alleged failure to notify him within a reasonable time, of the refusal of a person, to whom Kremer had sent goods by the express company, to accept and pay for the same. The suit was brought, by appeal, to the Municipal Court of Memphis, where it was tried under the statute, by the Judge of that Court, without a jury, and judgment rendered in favor of the defendant.
There is, in the record, a bill of exceptions, showing the evidence introduced upon the trial, but no finding or statement of the conclusions of fact or law arrived at by the judge.
No exception appears to have been taken to any ruling of the Court in the progress of the tidal; but a new trial was moved for upon the grounds, that, the decision of the judge was contrary to the evidence, and that the Court had erred in the law, as applicable to the facts of this case.
It appears, from the evidence in the bill of exceptions, that, on the 13th of March, 1867, Kremer deposited with the agents of the defendants, at Memphis, a box of goods, to be transported by the defendant, as a common carrier, to one Donally, at Cairo, Illinois. The box was marked “C. O. D., $57.00,” the meaning of which was, that the defendant was to deliver *358 the package to the consignee at Caira, on payment of the sum marked thereon, and to receive the money and transmit it to the plaintiff at Memphis.
The plaintiff, not hearing from the goods, made inquiries at several times, of the agent in Memphis, who could give him no information. That agent, on the 4th of April, learned from the Cairo agent, that the goods had been refused by the consignee, and were then stored at the defendant’s office, in Cairo. This information was, on the same day, communicated to the plaintiff, with a notice that the goods would be reshipped to him at Memphis, on payment of freigh both ways. The plaintiff refused to accept the goods, or to order them to be returned, and thereupon commenced this action.
The value of the goods was $57.00, the amount marked on the package; and they consisted of winter garments for ladies, which the plaintiff’s witness testified had, at the date of the offer to return them, become unsalable, in consequence of the lateness of the season; that they would probably have to be kept over for another season; and that, • in the meantime, fashions may change; but there was no evidence, whatever, showing what the amount of the depreciation, if any, in their present value, was.
The usual time required for the transmission of goods from Memphis to Cairo, was from twenty-two to twenty-four hours, but it does not otherwise appear at what time the goods were, or might have been, received at Cairo.
*359 The plaintiff claims that he is entitled, in this action, to recover the value of the goods, or if not their value, then the damage that he has sustained in consequence of the failure of the defendant to notify him at once of the refusal of the consignee to accept the goods.
There was no refusal on the part of the defendant to deliver the goods, or any other evidence of a conversion; and the only damages which the plaintiff can claim under the circumstances proved in this case, are such as he may have sustained by the failure of the defendant to perform some duty in regard to the goods: Scovill vs. Griffith, 12 N. Y., 509.
Was the express company guilty of any breach of duty, in not sooner giving notice to the plaintiff that the consignee had refused to accept the goods?
A leading case upon this subject, in this country, is that of Fisk vs. Newton, 1 Denio, 45. In that case, the carrier was unable, after reasonable effort, to find the consignee, and therefore deposited the goods with a warehouseman in good credit, and took his receipt for the same, but gave no notice to the consignee. The warehouseman kept the goods for several months, and then sold them, and credited the proceeds to the carrier, and then became insolvent. The Supreme Court held that the carrier was not responsible for the loss. The rule established in this case, is recognized in Chitty on Carriers, p. 89, note; Angell on Carriers, sec. 291; Story on Bailments, secs. 538, 543; 2 Pars, on Contr., 5th ed., 210; Smith’s Lead. Cases, pt. 1, vol. 1, p. *360 304, 6th ed.; Goold vs. Chapin, 20 N. Y., 267; and Johnson vs. N. Y. C. R. R. Co., 33 N. Y., 612.
In Hudson vs. Baxendale, 2 Hurlst. & N., 575, the defendants, on the refusal by the consignee to receive a puncheon of gin which the plaintiffs had employed them to carry to him, put it into a warehouse and left it there for two months, without giving notice to the plaintiff. At the end of this period, it was found that a portion of its contents was gone. The jury found that the defendants had acted in a reasonable manner, and gave a verdict in their favor, and the verdict was upheld. The doctrine of this case is stated as the true rule, by Judge Redfield, in his work on Railways, 3d ed., p. 65; and I think, upon the whole, that it is sound and reasonable.
When goods sent by a common carrier, have arrived at their destination, and been tendered to, and refused by, the consignee, the contract for their carriage has been performed. The carrier may then retain or store the goods for the use of the owner; but if he retain the custody of them, it is as depositary and not as carrier. As such depositary, there being no agreement for compensation, he is liable only for gross negligence in regard to them.
But he has not the right to abandon the goods to destruction, or unnecessarily to expose them to loss or damage. And there might, possibly, be cases in which the nature of the property conveyed, or the circumstances attending the particular case, would render it a want of ordinary care and diligence to fail to give notice to *361 the consignor of the non-acceptance of the property by the consignee. But, if the obligation to give such notice exists in any case, it arises, not from the contract of carriage, but from the fact that the goods being lawfully in the custody of the carrier for a particular purpose, and that purpose having failed through an unforeseen contingency, the law throws upon the party who has assumed the custody, the duty of exercising reasonable diligence to protect the property so long as his custody continues.
But there is no rule of law which requires the carrier to give such notice in ordinary cases. The fact that the property transported has fluctuated, or is liable to fluctuate, in price, would hot, ordinarily, take the case out of the general rule. Such fluctuations are constant, and within the contemplation of all business men. The liability of the carrier for failure to give such notice, could only arise where such failure would be evidence of gross negligence on his part, in the discharge of the duty above mentioned, of protecting the property in his custody. And there might, be cases, as, for instance, the undertaking to transport and demand payment of a bill or note, in which an undertaking would be implied, from the contract of agency, to give the notices necessary in case of non-payment, to bind the indorsers.
I do not think that the fact that the Express Company, in the present instance, assumed the duty of collecting the price of the goods, in addition to its duty as a carrier, adds to or qualifies their obligation as to giving notice of non-acceptance. A duty of agency *362 was thereby superadded to the obligation to transport and deliver; but a general agency was not created thereby.
I see no evidence in this record, which, upon the principles above explained, would have authorized a judgment for the plaintiff; and the judgment must be affirmed.