By the Court:

Monell, J.
The very full, comprehensive, and intelligent finding by the referee, of the facts established by the evidence, has rendered it easy in the application of the principles of law which must govern the case.
There was but little dispute at the trial, and most of the facts found were not contested. Such as were disputed had enough evidence to support them, and we cannot, upon this appeal, disturb the referee’s conclusions.
The defendant, on the trial, requested the referee to find certain other and additional facts, which had been established by uncontradicted evidence, and which it was claimed exonerated from liability. But the referee refused to make such additional findings, not because they had not been proven, but because, in his judgment, they were immaterial. The rule on this subject is, that a referee is required to make such findings of fact as are necessary to sustain his conclusions of law. He is not required to find other facts which are merely of a negative character (Nelson v. Ingersoll, 27 How. Pr. R., 1).
I had occasion recently, in the case of Mierson v. Hope (decided December 3, 1870), to examine at some length into the duties and obligations of common carriers both upon land and by water. The result of such examination and of the authorities, most of which have been cited by the respondent’s counsel in this case, was, that such duty and obligation ceased only with a proper delivery to *633 the consignee. In the case of carriage by land, such delivery, except where otherwise controlled by contract or usage, and except, perhaps, in the single instance of carriage by railroad companies, must be to the consignee in person, or at his residence or place of business. In respect, however, to carriage by water, custom or common usage has relieved the carrier from the duty of actual delivery, and a landing upon a wharf, or a deposit in a storehouse, after notice to the consignee, is such a delivery as will terminate the responsibility of the carrier (1 Pars. on Con., 668; Story on Bail., § 545; Ostrander v. Brown, 15 J. R., 39; Fisk v. Newton, 1 Denio, 45).
The notice which it is required shall be given to the consignee, must be such as will afford him a fair opportunity of providing suitable means to take care of the goods, or to carry them away. And if such notice is not suitable in point of time or other circumstance, the carrier and not the owner takes the responsibility, if they are landed and left exposed to danger or loss (Mayell v. Potter, 2 J. C., 371).
Upon these general principles of law, the liability of a carrier by water depends, therefore, upon the character of the notice to the consignee, and the manner of discharging the goods intrusted to his care; and where the fact is found, that the notice was not sufficient in point of time or otherwise; or that the attempted delivery was not made in a suitable place or manner, or at a suitable time; or that it was done while being exposed to the elements, or was left exposed to the elements, without a justifiable reason, the law adjudges the carrier responsible for all such damages as may thereby happen to the goods.
The referee, as a concluding fact from all the evidence, found that the defendant was guilty of negligence and breach of his obligation and duty as the carrier of the goods, in landing the licorice on the dock, with knowledge of its perishable character, on a day unsuitable to the landing and transportation of such goods, without reasonable notice to the consignee sufficient to enable him to cause the same tó be weighed, transported, and protected against injury by the weather. We are not called upon *634 to review these findings, upon any allegation that they were not supported by sufficient evidence, but it is claimed, assuming the facts to be as found, that when they are coupled with such other facts as the defendant says ought to have been found, they show a complete discharge of his duty.
It appeared that on the 19th of September, the plaintiffs’ agent requested the defendant to land the licorice on that day, but he declined. He was then requested that if the next day should not be fine not to land it; and the defendant then said if the weather was fine on the next day he would discharge the licorice from the ship.
On the 20th of September (the next day) in the morning it rained and continued to rain until and at 9 o’clock in the forenoon, with thunder and lightning at 4, 7:50, and 8 o’clock. At 10 o’clock it was clear, and continued clear for one hour, when it became cloudy (light clouds for two hours and denser clouds thereafter),-and so continued till 2 o’clock and 37 minutes p.m., when it rained. At 3 p.m. it was still cloudy, but without rain. At 4 o’clock 25 minutes p.m. the rain again commenced, with thunder and lightning, and continued with increasing violence during the rest of the day and ensuing night.
Without further notice to the plaintiffs or their agent and consignee, the defendant, at or about 9 o’clock in the morning of that day (20th) commenced landing the licorice in good order upon the wharf, and continued landing the same until about J before 12 o’clock (noon), at which time verbal information from the defendant that the landing was in progress was given to the clerk of the consignee, and at 12 o’clock (noon) only about forty eases remained in the ship to be landed, all of which residue was landed in good order between 1 and 2 o’clock of that day on the wharf.
It will be seen that the rain on the morning of the 20th continued until 9 o’clock, after which time it was clear for a couple of hours, then became cloudy, then rained again a little after 2, and finally set in at 4, and continued a heavy rain during the afternoon and evening.
In such a state of the weather, and after the implied promise *635 not to land the licorice if the weather was not fine, and without any further notice to the consignee, the defendant commenced discharging the licorice upon the wharf, where, by exposure to the elements, it was damaged. And although notice was conveyed to the consignee at about 12 o’clock of the same day, there was not, for sufficient reasons, enough time for him to remove or shelter the property.
The reasons for the consignee’s inability to remove the goods were, that by the laws of the United States goods of foreign importation could not be removed from the wharf until weighed by a government weigher. A weigher could not be procured until 2 o’clock. He continued to weigh, and finished at 5 o’clock. The plaintiffs with great diligence removed the goods, but could not, although they made extraordinary efforts, secure them from the rain which fell during the afternoon and evening.
Under these facts the delivery on the wharf was not of a character to exonerate the defendant, and unless there was other evidence which ought to have controlled the referee’s conclusions, his judgment must be sustained.
An officer of customs testified that he was present, officially, while the cargo was being discharged, and took an account of it; that his duties required him to take such account, and he had a right to not permit working before sunrise or after sundown, and to stop working if it stormed.
The, duty of the custom-house official was simply to protect the interests of the government, and in the discharge of that duty he had a right to exercise a certain kind of authority over the cargo, and to prescribe, to a certain extent, the time and manner of discharging it. But the superintendence of such officer in no respect affected or changed the obligations of the defendant. The officer could have prevented the landing the goods in the night-time, and might have stopped their being discharged during a rain. But if he omitted to exercise his authority, he certainly would not be liable; and I cannot see how the defendant can seek shelter behind the officer’s neglect of duty, and claim immunity for his own negligence.
*636 The only additional fact which it was claimed ought to have influenced the referee’s decision, was that the master of the vessel upon examining his barometer found it was rising, and thereupon commenced unlading his cargo.
It is undoubtedly true that a common carrier is not responsible for injury to property, which, without his fault, has been caused by the elements, after it has been placed upon a wharf. In such case the liability, if any, is that of a warehouseman and not of a common carrier. But, be that as it may, the circumstance that the master discovered that the barometer indicated a clearing away of the rain, was not sufficient to justify a discharge of cargo at the late hour of the day and with the limited notice to the consignee.
We therefore think that the conclusions of fact reached by the referee were all that it was necessary for him to find; and that those he was requested to find, and refused to find, were wholly immaterial.
Upon these facts, under the principles of law which we have stated, it follows that the decision of the referee was correct.
The attempt to prove a custom or usage regulating the time - for landing goods on a wharf, to determine when the carrier’s responsibility ceases, was properly defeated.
And the further offer to show what constitutes a delivery of goods was an attempt to settle as a fact what is commonly considered a difficult question of law.
The judgment should be affirmed.