## L, & N. R. R. Co. v. Gay.

(Decided March 18, 1911.)

### Appeal from Clark Circuit Court.

Railroads—Shipment of Machinery—Refusal of Consignee to Accept Part of Machinery—Tender of Such Parts—Destruction by Fire.— In an action to recover the value of a seed separator destroyed by fire in appellant's depot, the only question necessary to be decided is whether appellee was justified in refusing to accept the five parts of the machine tendered to him before the fire, solely upon the ground that one part was missing. Held that if appellant tendered to appellee the five parts of the machine it was his duty to receive and receipt for those parts so tendered and to look to the railroad company for the delivery of the missing part and damages, if any, for the delay; and if not delivered he should have

attempted to supply the missing part from the factory at the expense of the railroad company, and in the event he could not supply it he could recover the full value of the machine.

PENDLETON, BUSH & BUSH, JNO. T. 'SHELBY and BENJAMIN D. WARFIELD for appellant.

J. M. STEVENSON for appellee.

OPINION OF THE COURT BY JUDGE NUNN—Reversing.

Appellee brought this action to recover the value of a special seed separator which was shipped to him by S. Howes & Co., from Silver Creek, New York, to be delivered to him by appellee in Winchester, Kentucky. On March 21 the depot of appellant in Winchester was destroyed by fire, and five pieces of appellee's machine, which had arrived immediately prior to that date, were also burned; the other part of the machine did not arrive in Winchester until April 6, 1906. Appellee recovered judgment in the lower court against appellant for $420, the value of the machine, with interest from March 22, 1906, until paid. Appellant asks a reversal of that judgment for three reasons: First, because the court erred in instructing the jury, peremptorily, to find for appellee; second, because the court erred in sustaining appellee's demurrer to a part of appellant's answer; third, because the court erred in holding that appellee was not required to accept a tender by appellant to make a partial delivery of the machine. Although appellant submits the foregoing propositions for a reversal, its real contention is that appellee was not justified in refusing to accept the five parts of the machine tendered to him in Winchester before the fire, solely upon the ground that one part of the machine was missing, and that as he did so refuse, it held them not as a carrier, but under the less onerous responsibility of a warehouseman. This we consider to be the real and only question necessary to be considered by the court. We deem it unnecessary to consider the difference between the liability of one undertaking to carry and the liability of one acting as a warehouseman. We must determine whether or not appellant's responsibility as a carrier ended before March 21, 1906, the date of the fire. If it did, its responsibility was that of a warehouseman and the judgment will have to be reversed. The liability of the carrier cannot end until that of the consignee, owner or warehouseman begins, and the car-

rier must show some open act or offer of delivery before its liability can be changed from that of a carrier to that of a warehouseman. It is agreed that the separator was "knocked down" and shipped in six separate pieces; that it was delivered to the initial carrier in this manner, and that when appellant received it from the initial carrier in Cincinnati, Ohio, and delivered it in Winchester only five parts of the machine were to be had. These parts were offered to appellee several days before the fire, but he refused to receive them because all of the machine was not there and tendered him. If appellee had a right to refuse to accept these parts, the judgment should stand, but if he had no such right, the judgment should be reversed.

Appellant says that only five parts of the machine were delivered to it in Cincinnati. Ohio; that it accepted, carried them to Winchester and offered to deliver them to appellee there. It admitted that the machine was shipped under one contract of carriage, and, of course, this fact was known to appellant at the time it received the five parts of the machine in Cincinnati.

Appellee contends that nothing short of delivery or an offer to deliver the whole of the machine could have relieved the company of its liability as an insurer, and cites from Vol. 6, Cyclopaedia of Law and Procedure, page 465, the following:

"There may be delivery and acceptance as to a part of the goods, leaving the carrier liable as to the balance. But unless there is something to indicate a contrary agreement, the contract of carriage will be deemed indivisible, and the consignee will not be bound to accept part performance."

As in the cases of Sayward v. Stevens, 3 Gray (Mass.), 97, and Chicago, et al., R. R. Co. v. Warren, 16 Ill., 502, 63 Am. Dec., 317, are cited to support this, but they do not do so in all particulars. In the Massachusetts case the owner of a vessed sued the consignee for unpaid freight on a bill of lumber. A portion of the lumber was lost from the vessel while on its way from Boston to San Francisco, and the owner of the vessel sold the balance of the lumber for the freight, but it paid only a part of it. The exact question before us was not in that case. The Illinois case was one where the shipper delivered to the railroad company about 1,700 pounds of rags packed in sacks, to be delivered at a certain point to the con-

signee. The railroad company attempted to deliver the consignee about 500 pounds of rags lying loose about the depot, in fulfillment of its contract of carriage. The court determined that the consignee was not compelled to receive them. They were loose; that is, they were not packed in sacks as were the rags which he delivered to the company, and there was no evidence that the rags offered to be delivered were any part of the rags shipped to him.

Appellant cites from volume 3, section 1365, of Hutchinson on Carriers, as the rule governing cases like the one at bar, the following:

"As a general rule, the doctrine that where goods are injured the owner may abandon them as for a total loss, and sue for their value, does not apply to contracts of affreightment. The fact, therefore, that the goods are injured upon the journey, through causes for which the carrier is responsible, does not of itself justify the consignee in refusing to receive them, but he must accept them and hold the carrier responsible for the injury. Where, however, the damage is such that the entire value of the goods is destroyed, the consignee may refuse to receive them, and sue the carrier for their value. Thus where a patent machine, while being transported from the manufacturer's, was so injured as to be practically worthless and to cost as much to repair it as to buy a new one, it was held that the consignee was justified in refusing to receive it, and might recover from the carrier the value of the machine and the amount paid for carriage with interest from the time when it should have been allowed. But where one of a number of boxes shipped was missing, it was held that the consignee was not justified in refusing to receive the balance, but was bound to accept them and hold the carrier for the missing portion."

And in support of this text, appellant cites the cases of Gulf, et al., R. R. Co. v. Booton. 15 S. W., 502, and Same v. Jackson, Id., 128. These cases do support the text. In the Booton case a lot of sewing machines were "knocked down" and put up in seventeen boxes and fifteen crates. Sixteen of the boxes and all the crates were transported and offered to be delivered to the consignee, but he refused to accept them because one of the boxes was missing. The court in that case determined that, under the circumstances, it was his duty to receive them

and hold the company responsible for the other box. In the Jackson case a trunk was shipped and a portion of the articles it contained when delivered to the carrier were missing when offered to be delivered to the consignee. The court determined that it was his duty to have received the trunk when tendered to him, and that the railroad would have still been responsible to him for the value of the articles lost. The trunk and the articles it contained, which were offered to be delivered to the consignee, were of value without the missing articles. This text and these authorities do not meet the issue presented in the case at bar. The things transported and offered to be delivered to the consignee in the cases cited were of value. The five pieces of machinery offered to be delivered in the case at bar were of no value as a machine without the missing part. We have been cited no opinion by this or any other court exactly in point.

Our conclusion is that if appellant tendered to appellee the five parts of the machine, it was his duty to receive and receipt for these parts so tendered and look to the railroad company for the delivery of the missing part and damages, if any, for the delay; and if not delivered he should have attempted to supply the missing part from the factory at the expense of appellant, and, in the event he could not supply it, he could recover the full value of the machine.

For these reasons the judgment of the lower court is reversed and remanded for further proceedings consistent herewith.