*ALBANY, January, 1818.*

OSTRANDER
v.
BROWN.

————◦❊◦————

## OSTRANDER *against* BROWN and STAFFORD.

IN error to the mayor's court of the city of *Albany*.

This was an action of *trover* for a box of tea, brought by the defendants in error against the plaintiff in error. At the trial before the recorder of *Albany*, in *September*, 1816, the plaintiffs below proved that, in the spring of 1815, they shipped, with a number of other articles, on board the sloop *George*, of which the defendant below was master, two chests of tea, to be carried to *Albany*, and delivered to *Mounsey* and *Olmstead* of that city; and it was testified by *Hyde*, a clerk of *Mounsey* and *Olmstead*, that the *George* arrived in *Albany* about the 22d of *May*, and that all the goods were received, except one chest of tea.

*Robert Brown*, a witness for the defendant below, testified, that soon after the sloop arrived at *Albany*, one of the firm of *Mounsey* and *Olmstead* came on board and put his name

*Where goods were put on board of the defendant's vessel to be carried to Albany, and on arriving there were, by the defendant's direction, put on the wharf, it was held that this was not a delivery to the consignee, and that evidence of a usage to deliver goods in this manner was immaterial, but that the defendant was liable in an action of trover for such part of the goods as was not actually delivered to the consignee.*

*And although the goods were taken away without the direction of the consignee, by a cartman usually or always employed to transport his goods, and the greater part actually received by the consignee, this was held not to be evidence of the delivery of the part alleged to be lost, as he was not to be deemed the general agent of the consignee for receiving his goods.*

*A carrier is not justified, by the inability or refusal of the consignee to receive the goods, in leaving them exposed on a wharf, but it is his duty to secure them for the owner.*

ALBANY,
January, 1818.

OSTRANDER
v.
BROWN.

opposite to the entry of the plaintiff's goods on the sloop's freight list; but it was sworn by *Hyde*, that the name on the freight list was not the hand writing of either of the consignees. *Brown* further stated, that the goods of the plaintiffs were put on the dock together, and were taken away by one *Carle*, a cartman, who was the general cartman of *Mounsey* and *Olmstead*, for carrying goods from the different sloops to their store.

The defendant offered to prove that it was customary in the city of *Albany* for the captains of vessels freighted with goods for merchants in that place, to deliver them by putting them upon the dock, and giving notice to the consignees, who usually had cartmen to convey them to their stores, and that such delivery, with notice, was, by custom, considered a good delivery. The counsel for the plaintiffs objected to this testimony, and it was overruled. The plaintiffs then offered *Carle*, the cartman, as a witness, who was objected to on account of interest, but was admitted by the court. *Carle* testified that he had often carried goods from the sloops for *Mounsey* and *Olmstead*; that, at the time when the chest of tea was lost, after the sloop had arrived at the dock, he saw one *Keeler*, who told him that there were some goods on board for *Mounsey* and *Olmstead*, and that he must go and take them away; that he carried one load one day, and another load the next, and believed that he carried all the goods of *Mounsey* and *Olmstead* that were shown him, to their store, who paid him for the cartage. He further testified that a part of the goods had, by mistake, been put into a waggon, from whence he took them. The jury found a verdict for the plaintiffs below, the defendants in error, the recorder having charged that *Carle*, under all the circumstances, was not such an agent of *Mounsey* and *Olmstead*, as to render a delivery to him a legal delivery.

A bill of exceptions was taken on the part of the defendant below, which was removed into this court by writ of error.

*Foot*, for the plaintiff in error, contended, (1.) That the proof offered of the usage, ought not to have been rejected. In *Smith* v. *Wright* (1 *Caines' Rep.* 43.) evidence of usage

was admitted; and the court say, that "the true test of a <span>ALBANY,</span>
commercial usage is its having existed a sufficient length of <span>January, 1818.</span>
time, to have become generally known, and to warrant the <span>OSTRANDER</span>
presumption that contracts are made in reference to it." <span>v.<br>BROWN.</span>
(*Rushforth* v. *Hadfield*, 7 *East*, 224.) In *Wardell* v. *Mou-*
*rillyar*, (2 *Esp. N. P. Rep.* 693.) which was an action
against a hoyman for not delivering goods, Lord *Kenyon* left
it to the jury to decide what was the custom, as to landing
the goods at a particular wharf. And many cases are to be
found in the *English* books, of evidence of usage or custom
being received. (*Syeds* v. *Hay*, 4 *Term Rep.* 260. *Hyde* v.
*Trent. Navig. Co.* 5 *Term Rep.* 389. 397. *Catley* v. *Win-*
*tringham*, *Peake's N. P. Cases*, 150. *Abbot on Ships*, 247.)
The time when the liability of the carrier is to cease, de-
pends on the custom of the particular place. (2 *Comyn on*
*Contracts*, 329, 330.)

2. A delivery to an agent, or servant, is a delivery to the
principal. The cartman, in this case, being in the usual em-
ployment of the plaintiff, must be deemed, *pro hac vice*, his
agent.

3. A delivery on the wharf, or at the dock, is, by law, a
good delivery. This seems to be admitted in the case of a
common carrier from port to port. (3 *Wils.* 429. 2 *Wm.*
*Bl.* 916. 5 *Term Rep.* 389. 4 *Term Rep.* 581.)

*Hale*, contra. This is an action against a common carrier,
who is held to very strict responsibility. Nothing but the
act of God, or a public enemy, will excuse him for a non-
delivery of the goods entrusted to his care. The delivery
must be either to the party himself, or to some person au-
thorized by him to receive the goods. Putting the goods,
especially where they are perishable articles, on a wharf or
dock, cannot be a good delivery. In the case of *Wardell* v.
*Mourillyar*, the delivery was made to a *wharfinger*, not
merely by putting them on a wharf. In *England*, a wharfin-
ger is an officer or agent well known in the law, and who is
responsible for the safe keeping of the goods delivered to
him. (4 *Term Rep.* 260. 7 *Term Rep.* 171. 5 *Burr.*
2825.)

No notice was given to the consignee, in this case, of the delivery of the goods at the wharf.

PLATT, J. delivered the opinion of the court.   In a case where the *precise place of delivery* is material, it may be proper to allow evidence of a *local usage*.   For instance, the usage at *Havanna* is often proved to show that some species of cargoes, such as slaves, are to be delivered at the *Moro Castle*, and that other articles are deliverable only on the wharfs in the inner harbour.   But in this case, it seems to me, that the only question is, not whether the tea was delivered at the *right place*, but whether it was delivered *at all*, to *Mounsey* and *Olmstead?*

If it be true, that one of the consignees went on board the vessel and saw a list of the goods, (which I think is not proved,) *that* would not be evidence of a delivery.   The goods were then in the hold of the vessel.   The master, soon afterwards, put them on the dock, but not in the presence, nor with the knowledge of either of the consignees. , No notice was given to *Mounsey* and *Olmstead* that the goods were unladen, or that they had arrived.   But a cartman who " had often carted for them ;" and who, no doubt, had often carted for fifty other persons, came, by the direction of Mr. *Keeler*, (a stranger to the plaintiffs below,) and on that day carried one load to the store of the consignees; the residue was left all night on the wharf, and the next day, the same cartman found some of them in a strange waggon, and the box of tea has not since been heard of.   In truth, the only acts done by *Mounsey* and *Olmstead* or their clerk, were to receive in store such articles as the cartman brought to them, and to pay him for carting them ; and there is no proof that they ever had any other knowledge of the goods. The weight of evidence clearly shows that neither of them were on board the sloop.

Admitting, then, that the wharf was the place of delivery, a mere *landing* the goods on the wharf was *no delivery.* A delivery, in this case, implies mutual acts of the *carrier* and the *consignees.*

A *tender*, merely, of the goods to the consignees, without their acceptance, would not be a performance of the car-

rier's duty in such a case. Suppose the consignees had been dead, or absent, or had refused to receive the goods in store, what would have been the carrier's duty? Certainly he would have no right to leave them on the wharf, or in the street, without protection. He would not be justified in abandoning the goods. He had notice that *Stafford* and *Brown* were the owners; and if *Mounsey* and *Olmstead* would not take charge of the goods as consignees, he ought to have secured them on board his vessel, or in some other place of safety; and that would have entitled him to his freight with all extra charges.

The decision of the court below on the question of local usage, was on a point which is immaterial in this case.

The second exception was, I think, properly abandoned on the argument; and the opinion of the court below on the last point, to wit, that the cartman was not to be regarded as the general agent of the consignees, for receiving goods, merely on the ground of his being often employed by them to cart goods, was undoubtedly correct. Because a merchant usually selects a cartman, and employs him exclusively in carrying goods, according to his orders, it by no means follows that such cartman is his general agent for receiving goods, without orders.

The defendants in error are, therefore, entitled to judgment.

Judgment accordingly.