SNOW (ELFELT v.). See Case No. 4,342.

## Case No. 13,145a.

### SNOW v. The INCA.

[17 Betts, D. C. MS. 28.]

District Court, S. D. New York. Nov. 6, 1849.

SHIPPING — DAMAGE TO CARGO — DELIVERY ON WHARF—PLACING IN STOREHOUSE— NOTICE.

[1. Delivery of goods upon the wharf is not a delivery to the consignee, unless he has authorized such a delivery, or there is proof of a well-defined and notorious custom to that effect.]

[2. Placing goods in a public storehouse without notice to the consignee, when he is known, does not release the liability of the ship for their safe keeping and ultimate safe delivery.]

[3. Publication of notice in a newspaper, requiring consignees to present their permits within five days, or the goods will be sent to the public store, is not sufficient to charge a consignee with notice, in the absence of positive provision of law to that effect, or proof that the notice actually reached him.]

[This was a libel by Nathaniel Snow against the bark Inca to recover damages for injury to goods.]

BY THE COURT. The bills of lading executed by the master of the barque at Marseilles admitted the casks therein referred to to have been received on board in good order, "weight and contents unknown." On the inspection of the contents at the public store in this city, it was found that the cream of tartar was damaged, and that damage was estimated by the public examiner at 25 per cent. That estimate he confirmed on his examination in court as a witness. The theory of the libellant is that the drug was injured from the casks' having been badly stowed, and being wet by bilge water, in which was also dissolved portions of a barrel of verdigris, stove on the passage. Two port wardens and the public examiner testify that the injury arose in that manner. Two druggists and chemists of great experience and learning testify on the part of the claimants that it is impossible, from the description given of the injury, to determine whether it was caused by dampness from salt or fresh water; and the first mate testified that the barrels in question were landed on the wharf from the vessel, and lay there, exposed to the melting of snow, for a day and night, or longer. In the judgment of the last-named witness, such exposure would account for the stains to the casks and contents described as the alleged injury. It must be taken as established, upon the proofs before the court, that the goods were laden on board in good order. The responsibility of the ship then becomes absolute so to deliver them, the dangers of the sea excepted. The defence, equally with the prosecution, unite in proving that no damage accrued from the perils of the sea; the vessel did not leak, and shipped no water.

The claimants prove by the master the casks were taken out of the ship in as good order as they were received on board, and this, it is contended, is a delivery and acquittance under the bill of lading. No permit was obtained for the delivery of these goods, and they were, by general order, sent to the public store. The delivery on the wharf is in no case a delivery to the consignee, without evidence of his authorization so to make it, or at least proof of a well-defined and notorious custom to that effect. Ostrander v. Brown, 15 Johns. 39; Gibson v. Culver, 17 Wend. 305; House v. The Lexington [Case No. 6,737]; The Grafton [Id. 5,656]. Placing the goods in a public store, without notice to the consignee, when he is known, would not release the liability of the ship for their safe keeping and ultimate safe delivery. House v. The Lexington [supra]; Burgthal v. The George Skolfield [Case No. 2,155]. It would therefore not relieve the claimants from their responsibility, if it be proved that the damage accrued by wet or dampness to the casks on the dock. The ship had no right to leave them there without previous notice to the consignees. I lay little stress on this branch of the case, because the mate is contradicted by Jervis, the customhouse inspector, and the circumstances of the case support his evidence, against that of the mate, in this particular. The only proof of notice is the publication in the newspapers requiring the owners and consignees of goods on board the ship to present their permits within five days, or that the goods would be sent to the public store. No evidence is offered raising an implication that the claimants had seen those publications. The insertion of notice in the public papers does not charge a party with knowledge of it, unless it be made evidence by positive law, or some circumstance be proved indicating that it actually reached the party interested to receive it. 1 Phil. Ev. 4082; Id. 77 (Cow. & W. Notes, 1145, 1146). Evidence is not, therefore, furnished, authorizing the claimants to place the goods upon the dock, and leave them exposed there to injury from dampness. The mate swears the casks lay on the wharf, in the snow, and, in the opinion of experts, such exposure would account for the injury, the cream of tartar was subsequently found to have sustained; but as before remarked, the mate is probably mistaken as to this fact.

It is unnecessary to consider what effect sending the goods to the public store would have on the contract in this case. The consignees were not named in the bill of lading, and no evidence is given that the master or owners of the barque knew to whom the goods were to be delivered. It is not intended to say, under such circumstances, the ship may be made liable for injuries to the goods in the public store, nor but that the notices given in the newspapers were sufficient to justify sending the goods there. But it is clearly proved that the goods were not exposed to dampness in the store, and could not, therefore, have been so injured at that place; and upon the question whether the injury arose from internal causes, or from fresh water or bilge water, the clear preponderance of evidence is that it was occasioned by one or the other of the two latter causes, and not from inherent defects, for neither of which the ship must be held responsible, whether the damage accrued on shipboard or on the dock.

The evidence is reasonably satisfactory that the injury was 25 per cent. upon the value of the contents in the damaged casks. The value of the nine casks not being proved, a reference must be had to ascertain that value, unless it be agreed between the par-

ties, and a decree be rendered in favor of the libellants for 25 per cent. thereon, with costs to be taxed.