THIS was an action of assumpsit for alleged damages sustained on two boxes of soap shipped by the plaintiffs over the road of the defendant from Philadelphia to Dover, and upon a barrel of eggs to be shipped from the depot of the company at the latter place to Philadelphia, and also on a box of tobacco shipped over the road from Philadelphia to Dover and lost at the depot of the Company after its arrival at the latter place, amounting in the aggregate to $177.41. There were several counts in the narr against the company as common carriers, for the non-delivery of the soap and eggs, and also as depositaries of the box of tobacco.
It was proved that it was the usual practice of the agent at the depot to put goods and merchandize arriving at Dover by the cars, in the warehouse of the company in an hour or two, unless they were called for within that time. Also, that two boxes of soap arrived there for the plaintiffs by the freight train about 10 o'clock in the morning in the month of August 1864, and that in about an hour afterward the agent of the plaintiffs visited the depot and inquired of the agent of the company, if there was anything there for them, and was informed that there was, and that the same was then shown to him. Afterward, during the same day, the attention of one of the plaintiffs who was at the depot was called to them as they lay on a platform between two tracks of the road, and was informed that the warehouse was full and there was no room in it for them, and was requested by him to take them away. Both of the boxes were afterward seen the same afternoon on the pavement of the depot, with the end of one of them projecting so much over the curb stone and the inner rail *Page 394 
of the main track that it was knocked off and run over by a passing train, and about thirty pounds of the soap was damaged and destroyed. The box with two small caddies of tobacco was shipped in June 1865, and soon after reaching the depot was put in the warehouse, and about noon of the same day, the clerk of the plaintiffs went to the depot and took away the two small caddies, but as the box contained a hundred pounds, the carter employed by him objected to taking it, as he then had with other goods for other persons in his wagon as heavy a load as he was willing to put in it; it was left out on the platform of the warehouse, near the door of it, and as Saturday afternoon was a very busy time with them at the store of the plaintiffs, he was not able to go for it again until the following Monday morning, when it was not to be found. It was also proved that the doors and locks of the warehouse were at that time in such bad order and condition as to afford scarcely any security for goods stored in it. It was in the preceding winter the barrel of eggs was sent to the depot to be forwarded to Philadelphia, containing about eighty dozen, then worth forty-five cents per dozen in the city, in regard to which the proof was that the barrel was in good condition when it left the store of the plaintiffs and when it was deposited on the platform at the depot; but afterward on the same day whilst the train hands of the company were carefully transferring it from the platform to the cars by moving and working it cautiously on the chime of the lower head of it, just as it reached the edge of the platform and whilst they were putting it in the car, a portion of the lower head of it fell out, and before it could be carefully turned down horizontally upon the platform or floor of the car, a considerable portion of the eggs fell out and were broken, but as there was snow on the ground at the time, they were not all broken, and such as were not, were picked up and put again into the barrel and in the depot with the others which had not fallen out of it, and the plaintiffs were immediately notified of the accident, but never sent for them, nor gave any order or direction in regard to them, and *Page 395 
they remained there until they spoiled. Upon examination it was found that the head of the barrel had nothing within and around the rims of it, to strengthen and support the heads of it, as it should have had with such a weight in it for safe transportation of it over a railroad.
Watson, (Ridgely with him,) for the plaintiffs, contended that the contract and undertaking of the defendants as common carriers, was to carry the goods safely from the place where they received them to the place where they were to deliver them, and there to deliver them in as good order and condition as when they received them, and if any damage or loss occurred to them in the meanwhile, unless by the act of God, or the public enemy, they were responsible to the plaintiffs for it; and that their liability for such loss or injury did not terminate with the arrival and discharge of the goods from the cars at the depot at Dover, but their contract to take, carry, and deliver them continued until they could, with due notice and reasonable diligence on the part of the plaintiffs, be received and taken by them; and until that could be done, the defendants were equally bound for the safety and delivery of them in good order and condition. But if it were necessary in such a case for the plaintiffs to prove actual negligence on the part of the company, or its agents and representatives at the depot here, it was sufficiently shown in the evidence and manifested in the manner in which both the soap and tobacco were left exposed on their open pavements and platforms, the one for several hours, and the other for nearly two days and nights, after they had reached there. As to the barrel of eggs, the proof was that they had been put up in as good and safe a manner as was usual, and were in a good and sound condition when started for, and when left at the depot, and when they were received by the agent of the company for transportation by the railroad to their destination, without any objection to the strength or sufficiency of the barrel in which they were packed; and, as the loss upon it occurred after it had *Page 396 
passed entirely into their custody and possession, the defendants, even without proof of negligence or of want of care or skill on the part of their servants in the handling of the barrel, were answerable for it. 32 N. H. Rep. 523. 16 Ill. Rep. 503. McHenry v.P. W. B. R. R. Co., 4 Harr 448. Hostrand v. Brown etal. 15 Johns. 39. Thomas v. B. P. R. R. Co. 10Metc. Rep. 472.
Comegys, for the defendant. On the deposit of the box of tobacco in the warehouse of the company, and notice thereof to the plaintiffs through their clerk, the defendant ceased to be liable, as a common carrier, for the safety of it, and after that became a gratuitous bailee or depositary merely of it, as there was no proof, nor was it the case in point of fact, that the company ever made any charge whatever for the deposit or storage of goods in its warehouses. In regard to bailments it is well known there are three kinds or degrees of diligence required by law, denominated extraordinary, ordinary and slight diligence, which vary according to circumstances and depend respectively upon the comparative hazard, danger and insecurity to which the goods, according to time and place, are incident or subject; and that a bailee or depositary without compensation, is bound only for slight diligence, is equally well known. Story on Bailms. secs. 2, 61; and is only liable for gross negligence in case of their injury or loss. In case of goods transported by railroad companies which must have of necessity particular places or stations immediately on the sides of their roads for the delivery of goods transported over them, as common carriers by steam power over their roads, the owner or consignee of them is bound to remove them within a reasonable time after he has received notice of their arrival at the proper and destined station; and what will be a reasonable time in such a case, must depend on the time of their arrival and the distance of the owner or consignee from the station, particularly under ordinary or usual circumstances, and that after such reasonable time has elapsed, they are to be held, if not as in *Page 397 
effect delivered to him, or as entirely subject to his risks, they must, then, at least, be considered, when no charge is made for the care or keeping of them, as in the custody of such a common carrier as a gratuitous bailee, or depositary merely. Under ordinary circumstances a few hours, at furthest, would afford the plaintiffs ample time after receiving notice of the arrival of such goods at the depot here, to remove them to their store in the town. If the damage to the eggs was owing to a defect in the barrel, as appeared from the evidence, whether known or unknown to the plaintiffs, the fault was theirs for not packing them in a better one, and the company is not liable for it, as it was no duty of theirs to have a cooper at their station either to ascertain, or to remedy any such defect in it.
Ridgely replied.
The plaintiffs in the action seek to recover damages from the defendants for the non-delivery of certain tobacco and soap, which had been forwarded to the former, from Philadelphia and Wilmington, and also for the loss of a barrel of eggs, which had been placed in the custody of the agent of the defendants at their depot at Dover for transportation to Philadelphia. They are sought to be charged, first, as common carriers; secondly, as warehousemen, or as depositaries.
As railroad companies are, as well by their charters, as under the general law as common carriers, clothed with more than ordinary powers and privileges, and are designed to furnish special facilities of accommodation to the public, it is but proper that they should be held to corresponding duties and responsibilities.
The first rule in regard to these responsibilities applicable to this case, is, that, as common carriers, they were bound to safely keep, safely carry, and safely deliver the goods confided to them for transportation, and that they are responsible in damages for any injury or loss which *Page 398 
the owner may have sustained by reason of their default or negligence. They are, in other words, insurers for the preservation and safe delivery of the goods at their place of destination, and are bound for all loss or damage, unless the same was caused by the act of God, or the public enemy.
This rule, however, must be considered as subject to certain limitations or qualifications. And in adverting to the several grounds of defence urged on behalf of the defendants as applicable to the several kinds and parcels of goods, for the loss or injury of which damages are sought to be recovered, we shall have occasion to consider some of these limitations. And first, as to the tobacco. The question as to this article is whether the defendants are responsible, as common carriers, or as mere gratuitous depositaries, and whether it was not, either constructively or actually delivered to the plaintiffs. According to the general usage and rule of the railroad company, they were bound to deliver the goods at their place of destination, which in this case was at their depot or station, outside of the town of Dover. The delivery may be either actual or constructive. They were bound to discharge the goods from the cars, and to deliver them to the plaintiffs or their agent, or to deposit them in some suitable place of reasonable safety where they could be had and taken away. The warehouse of the company is considered such suitable place of deposit. When the goods were discharged and so deposited, and knowledge of the fact brought home to the owner, or his proper agent, Mr. Warner, who went out to the depot to look after them, the responsibility of the railroad company as common carriers, ceased and determined; for as no further duty, as carriers, remained to be done, their responsibility as such ended; and the plaintiffs after such deposit and notice, were bound to use reasonable diligence in taking charge of, and carrying them away. Under such circumstances the railroad company would become mere depositaries; and if such for hire, they would be bound to take ordinary care of the goods, *Page 399 
such care as a person of common prudence usually takes of his own property. But as they were gratuitous depositaries, or in other words, depositaries without reward, they were only bound for slight care, and were only responsible for gross negligence. Again, when goods have arrived and been deposited, and the fact has been made known to the owner or his proper agent, he is bound to take them away within a reasonable time. The tobacco in question, with other parcels arrived about ten o'clock on Saturday morning, and were deposited either inside the warehouse, or in the doorway of the warehouse, partly within the doorway and partly on the platform. Mr. Warner, the clerk of the plaintiffs, who went out to the depot between ten and eleven o'clock in the morning to look after them, was shown them by Mr. Smith, an agent of the company, and went and took several of the parcels away with him, but left the box of tobacco behind, alleging that the dearborn in which he purposed to carry them was not strong enough to take the box of tobacco and the other articles then in it. It remained at the warehouse and was not sent for during all of Saturday, but when it was sent for on Monday following, it was not found. Now, under these circumstances, it is for the jury to consider whether during Saturday was not a reasonable time within which the plaintiffs should have sent for and taken the box of tobacco away, and whether thus waiting until Monday before they sent for it, was not an unreasonable delay.
Again, there is another view of the case, as respects the tobacco, which it is proper the jury should consider. According to the testimony of Warner, he went to look after the goods and Smith informed him of their arrival, and pointed them out to him. He, Warner, went to where they were deposited intending to take the whole of them away, but finding, as he alleges, that the dearborn was not strong enough, he took away a part, the smaller parcels, leaving the box of tobacco behind in the place where it had been deposited by the agent. These facts are not disputed. The question, therefore, arises whether there *Page 400 
was not an actual delivery by the defendants of the whole lot. If the agent of the company actually relinquished his charge of the goods and Warner took the custody and control of them, but merely left the box of tobacco there to suit his own convenience, or because it was inconvenient at the moment to take it away, without making any new arrangement with the agent for its custody, it would seem that the liability of the defendants, even as depositaries, had ended. But if Warner left the tobacco in the care and subject to the control of the agent with the consent of the latter, then the liability of the defendants, as gratuitous depositaries, would continue, and they would be answerable for gross negligence.
As to the eggs. The defence urged is that the loss ensued from the want of care and skill on the part of the plaintiffs in packing the eggs and coopering the barrel. If the eggs were well packed and the barrel well coopered when delivered to the agent of the railroad company for transportation, and the loss or damage resulted from the negligent or careless handling of the barrel by such agent, then the defendants are responsible as common carriers to the extent of such loss or damage. But if the loss was owing to the want of care or skill of the plaintiffs in packing the eggs or in coopering the barrel, or if there was an inherent defect in the barrel, at the time when it was delivered to the agent of the railroad company, and the head fell out by reason of such defect whilst he was with due care and caution moving it into the car for transportation, the defendants are not liable for the loss.
As to the boxes of soap. As I have already stated, the defendants were bound, as common carriers, to deposit the goods in some suitable place of reasonable security for delivery to the owner. If their warehouse, in consequence of the glut of business was full, they were still bound to put the boxes of soap in some other place of reasonable safety and give notice to the owner or his agent, of their arrival, and upon such notice the plaintiffs were bound to take them away within a reasonable time. If the boxes of *Page 401 
soap were not put in a place of reasonable safety, or if they were placed on the railroad track, or if they were placed on the curbstone and pavement, or on the platform so near the railroad track as to be liable to be struck, or knocked off by the passing of the cars, and loss or injury ensued in consequence thereof, then we say to you the defendants were guilty of negligence and are answerable to the plaintiffs to the extent of the loss or damage which they may have sustained by reason of such negligence.
Damages are given as a compensation, recompense or satisfaction to the plaintiff for an injury actually received by him from the defendant. They should be commensurate with the injury, neither more nor less.