## COOK *vs.* THE ERIE RAILWAY COMPANY.

Where a carrier of goods notifies the consignee of their arrival, and that they must be unloaded and taken away by a specified day, and then causes the goods to be unloaded before the time specified, and they receive injury in consequence of being thus unloaded, the carrier is liable, as such, for the damage resulting from the injury, whether guilty of negligence or not.

If the goods are not unloaded until after the expiration of the time fixed for unloading and taking them away, then the carrier is bound to exercise such care and prudence in unloading and caring for them afterwards, and before they are removed by the owner, as a person of ordinary prudence would take of his own property. And if the goods are injured in consequence of the carrier's neglect to exercise such care and prudence, the carrier is liable to respond in damages for the injury.

And although the goods are not taken by the consignee within the time fixed for their removal, and he either neglects or refuses to take them within such reasonable time, yet the carrier has no right to cast the goods away, or to throw them out, or leave them where they will be open and exposed to injury from the elements.

In such a case it is the duty of the carrier to take care of them for the owner. And if he neglects this duty he will be held liable for the damages arising from a want of such care.

This care must be such, at least, as a prudent and careful man would take of his own property of like description.

A common carrier may discharge his liability entirely, by placing the goods in a warehouse at the place of destination, or by delivering them safely to some responsible third person who will undertake to keep them safely, and deliver them to the consignee when called for, in case the consignee cannot be found, or he refuses or neglects to take them away within a reasonable time after tender or notice.

After the arrival of goods carried by a railroad company, at their place of destination, and notice to the consignee, the latter commenced removing them, but residing at a distance of twenty miles from the depot, with only one team, he could not conveniently take more than one load per day. The goods were not put into a warehouse, or left with a third person for the owner, but were thrown out of the car, upon the ground, on the company's premises, and by the directions of their agent; and while in this situation, were wet and damaged by the rain, for want of shelter. In an action by the owner, to recover damages of the company, *it was held* that the question whether the defendant had taken proper care of the goods, and whether they had been injured by reason of their not having been properly cared for, was a question for the jury, and it was properly submitted to them.

The duty of a carrier is not fully discharged by transporting the goods and giving notice of their arrival, to the consignee; but continues until he

Cook *v.* Erie Railway Company.

has taken care of the goods, by placing them in a safe place, or in safe hands, for the consignee.

A carrier of goods is bound either to deliver them to the consignee personally, or to give him notice of the arrival thereof.

THIS action was brought to recover of the defendant, as a common carrier, damages for so " carelessly unloading " a lot of hides at the defendant's Savona station that they were spoiled. On the trial it appeared that the defendant as a common carrier undertook, in November, 1868, to transport a lot of hides for the plaintiff, from New York to Savona; that the hides arrived in the defendant's car, at that station, on Monday the 9th day of November. It appeared also that hides had been previously transported by the defendant to that station for the plaintiff, but never stored. On this occasion there was no room in the defendant's storehouse for them. On the Monday of their arrival the plaintiff's agent was notified of their arrival; and that the car containing them would be wanted on the following Thursday; a printed notice from the defendant, containing amongst other things, notice that the defendant reserved the right to unload after the expiration of twenty-four hours, in the most convenient place for the company, charging the consignee for the same, and that the company would not be responsible for damage resulting therefrom, was at the same time handed to the plaintiff's agent. The plaintiff, by the same agent, on that day (Monday) or on the following day (Tuesday) paid $60.62, being the freight upon the hides, at which time the car door was unlocked and a load taken by him. The hides which the plaintiff omitted to remove from the car were unloaded upon the ground near the depot. There was a conflict in the evidence as to whether the hides were unloaded on or before Thursday, the time at which the plaintiff was notified the car would be wanted. The plaintiff's witness testified that on Wednesday they were strown upon the ground, while on the other

hand the defendant's witnesses testified that they were not unloaded until Thursday afternoon, and were carefully piled on the ground. They were, nevertheless, after being unloaded, wet and damaged for want of shelter. Upon this state of facts the defendant's counsel asked the judge to charge the jury: That after notice of the arrival of the hides, and reasonable time for their removal, the defendant was not required to unload them in a place protected from the storm unless it had such a place prepared. The court did not so charge, but on the contrary, charged, that although the defendant's relation to these hides, as a common carrier, had ceased, they were " liable to the plaintiff for any damages which resulted to the plaintiff for a lack on the part of the defendant, of ordinary care and prudence in the custody and treatment of the property;" and that if the hides were not unloaded until after the time when, by the notice given to the plaintiff, he was permitted to leave them in the car, then the question would be, whether in such unloading, the defendant exercised ordinary care and prudence in the care and treatment of the property, such as an ordinarily careful man would take of his own property ;" and further on in his charge, he stated that there were platforms about the buildings upon which hides might have been piled, with more or less inconvenience to the defendant's business; that there was lumber about there from which a platform might have been made, and the hides covered, and that it was for the jury to say, under all the circumstances, whether the defendant used the ordinary care and prudence he was bound to use; that if they were unloaded, after the time fixed, and disposed of without ordinary care and prudence, the defendant was liable.

The defendant's counsel requested the court to charge the jury, in substance, that the law did not require the unloading to be in a place protected from the storm, unless the defendant had such a place prepared and not occu-

Cook *v.* Erie Railway Company.

pied by other freights; but that the only want of care for which the defendant was responsible, was carelessness in the manner of unloading. The court refused so to charge, and the defendant's counsel excepted.

The defendant's counsel further requested the court to charge the jury, that there was no duty upon railway carriers to store goods, after the consignee had notice of their arrival, and a reasonable time to remove them. The court declined so to charge, and the counsel for the defendant excepted; and he also excepted to the refusal of the judge to charge each of the following propositions, viz: That there was no duty upon the defendant to store hides after the plaintiff had notice of their arrival, and reasonable time to remove them; and, that after notice of the arrival of the hides, and a reasonable time for their removal, the defendant was not required to unload them in a place protected from the storm, unless it had such place prepared.

The defendant also excepted to that portion of the charge of the judge, in which he instructed the jury, that if the hides were not unloaded until after the time when, by the notice given to the plaintiff, he was permitted to leave them, that the question would then be, whether in such unloading, which the defendant had the right to do after the expiration of the time, the defendant exercised ordinary care and prudence in the care and treatment of the property, and that ordinary care and prudence was such care and prudence as an ordinarily careful man would take of his own property.

The jury rendered a verdict in favor of the plaintiff, for $800. Thereupon the defendant, at the same circuit, made a motion, which was entertained by the judge who tried the cause, for a new trial, as well upon the exceptions taken, as for excessive damages. This motion was denied, and the case and exceptions ordered to be heard at the general term, in the first instance.

*D. Rumsey,* for the plaintiff.

I. The several objections taken by the defendant to the evidence were properly overruled. The evidence was relevant to show that there was no negligence on the part of the plaintiff, and as bearing directly upon the question of damages. Handmore swore that he could have drawn a hundred hides had they been dry, and only half that number after they were wet. This increase in the cost of transporting the hides was clearly an item of damage, and the evidence offered was competent as showing the measure of damages in that respect. (*Briggs* v. *N. Y. Central R. R. Co.,* 28 *Barb.* 515.) The increase in the cost of transportation of the hides to Tyrone, by reason of their being wet, was a direct and necessary result of their wetting. (2 *Greenl. Ev.* § 268, *a. Sedgwick on Measure of Damages,* 359.) But though this evidence may not have been properly admitted, it could do the defendant no harm, and is not cause for granting a new trial. (*Benjamin* v. *Smith,* 12 *Wend.* 404. *Brown* v. *Hoburger,* 52 *Barb.* 15. *Rundle* v. *Allison,* 34 *N. Y.* 180. *Patterson* v. *O'Hara,* 2 *E. D. Smith,* 58.)

II. The exception to the charge that the defendant was bound to exercise ordinary care and prudence after its liabilities as common carrier had determined, was not well taken. (*Thomas* v. *Boston and Providence R. R. Co.,* 10 *Metc.* 472. *Goold* v. *Chapin,* 10 *Barb.* 612, 616. *S. C.* 20 *N. Y.* 259. *Story on Bailments,* § 448.) These authorities all hold that the carrier, after his liability as carrier has ceased, becomes liable as warehouseman. But warehousemen are liable for ordinary neglect, and they are bound to ordinary care, skill and diligence. (*Story on Bailments,* § 444. *Powers* v. *Mitchell,* 3 *Hill,* 545. *Platt* v. *Hibbard,* 7 *Cowen,* 497. 2 *Kent's Com.* 591.)

III. The request to charge that the cases referred to by the plaintiff's counsel did not require the unloading to be in a place protected from storm, unless the defendant had a place

prepared, &c., was properly refused. There is nothing in the case upon which this request could be based. (*City of N. Y.* v. *Price*, 5 *Sandf.* 542. *Benson* v. *Berry*, 55 *Barb.* 620.)

IV. The request to charge that the defendant was not bound to deliver to the consignee personally, or to give notice of the arrival of the goods, was properly refused. If a charge of the court contains two propositions, and is excepted to generally, if one of the propositions is true, the verdict will not be set aside for error in the other proposition. (*Hart* v. *R. and S. R. R. Co.*, 4 *Seld.* 37. *Jones* v. *Osgood*, 2 *id.* 233. *Haggart* v. *Morgan*, 1 *id.* 422. *Caldwell* v. *Murphy*, 1 *Kern.* 416.) But the carrier is bound either to deliver the goods to the consignee personally, or to give notice to the owner or consignee of the arrival of the goods. (*Gibson* v. *Culver*, 17 *Wend.* 305. *Miller* v. *S. N. Co.*, 10 *N. Y.* 431, 439. *Price* v. *Powell*, 3 *id.* 323, 326. *McDonald* v. *W. R. R. Corp.*, 34 *N. Y.* 497, 501. *Northrop* v. *Syracuse, &c. R. R. Co.*, 5 *Abb. Pr. N. S.* 425, 432. 2 *Kent's Com.* 605.) But the case shows that the consignee had notice, and a time limited for him to take the goods away. Therefore the refusal to charge could have done the defendant no harm, although the request had been correct; and it was proved that the plaintiff had an agent at the depot on the day the hides arrived, to inquire for them, and who received notice. A judgment will not be reversed for a technical error, which the court can see did or could do the party complaining of it no injustice. (*Court of App. June* 30, 1870. 2 *Alb. Law Jour.* 69.)

V. The court was correct in refusing to charge that the liability of the defendant as warehousemen continued for only a reasonable time. Such liability continues until the carrier is legally discharged. (*Goold* v. *Chapin*, 20 *N. Y.* 259.) "Suppose the consignees had been dead or absent, or had refused to receive the goods in store, what would have been the carrier's duty? Certainly he would have no right to leave them on the wharf or in the street with-

out protection.    He would not be justified in abandoning the goods." (*Ostrander* v. *Brown*, 15 *John.* 39, 43.)    The carrier may certainly terminate his liability as carrier by placing the goods in store with a third person for the owner.    (*Fisk* v. *Newton*, 1 *Denio*, 45.)    But if they deposit the goods in their own warehouse, their liability as warehousemen commences after the consignee has a reasonable time to take the goods away, and continues until discharged by law.    (*Goold* v. *Chapin*, 10 *Barb.* 612, 617. *Northrop* v. *Syracuse, &c. R. R. Co.*, 5 *Abb.* N. S. 425. *Thomas* v. *Boston, &c. R. R. Corp.* 10 *Metc.* 472, 477.    *Norway Plains Co.* v. *Boston and Maine R. R. Co.*, 1 *Gray*, 263.) In this last case the court say : "It is the duty of the company to store them and preserve them safely, ready to be delivered, and actually deliver them when duly called for by parties authorized to receive them; and for the performance of these duties after the goods are delivered from the cars, the company are liable as warehousemen or keepers of goods for hire."    And this seems to be received as law, as far as quoted in *McDonald* v. *W. R. Corp.*, (34 *N. Y.* 503,) and in *Northrup* v. *Syracuse, &c., R. R. Co.*, (*supra.*)

VI. The refusal of the court to charge that there was no duty upon railway carriers to store goods after their consignee had notice of their arrival and a reasonable time to remove them, was correct.    (*Ostrander* v. *Brown*, 15 *John.* 39.    *Angell on Carriers*, § 75.    2 *Kent's Com.* 605.    *Goold* v. *Chapin, supra.    Kimball* v. *W. R. Corp.*, 6 *Gray*, 542. *Powell* v. *Myers*, 26 *Wend.* 591.)

VII. The exception to the refusal of the court to charge that if the hides were not unloaded until Thursday afternoon, as stated by the defendant's witnesses, the plaintiff could not recover, was not well taken.    1. The defendant's liability as a common carrier continued for a reasonable time.    (*Price* v. *Powell*, 3 *N. Y.* 322.    *McDonald* v. *W. R. Corp.*, 34 *N. Y.* 497, 501.)    The defendant had set Thursday as a reasonable time to take the hides away, and was

liable as carrier until the expiration of that time.   2. Admitting that the defendant had gained the right to unload the hides on Thursday, yet if it was negligently done, so that they were injured by it, the request was properly refused.   The defendants were liable for ordinary neglect, though their extraordinary liability had ceased, and the court so charged.   (*Goold* v. *Chapin*, 10 *Barb.* 612.   *Platt* v. *Hibbard*, 7 *Cowen*, 497.)   The evidence shows that the hides were peculiarly susceptible to injury by wet, and that they were not stacked or covered up.   For this reason, that the proposition was not right in every aspect, the refusal so to charge was correct.   (*Doughty* v. *Hope*, 3 *Denio*, 594.   1 *N. Y.* 79.)

VIII.  The exception to the refusal to charge that there was no duty upon the defendant to store the hides after the plaintiff had notice of their arrival, and reasonable time to remove them, was not well taken.   (*See authorities cited under 6th point.*)

IX.  The exception taken to the refusal to charge that after notice of the arrival of the hides, and reasonable time for their removal, the defendant was not required to unload them in a place protected from storm, unless it had such place prepared, was not well taken.   (*Goold* v. *Chapin, supra.   Powers* v. *Mitchell*, 3 *Hill*, 545.)   The proprietors of a railroad are liable for want of ordinary care in their servants, in unloading freight from their cars, and if damage occurs through want of such care, they are responsible therefor.   (*Kimball* v. *W. R. R. Co.*, 6 *Gray*, 542.)   It will not be denied that there was negligence in unloading these hides in an exposed place.   It was not such care as an ordinarily careful man would take of his own property.

X.  The last exception was not well taken.   It has been shown that the defendant, after its extraordinary liability had ceased, was liable as warehouseman, and that in that capacity it was held to ordinary care and prudence; and ordinary care and prudence was properly defined as such

"as an ordinarily careful man would take of his own property." (*Shear. & Red. on Neg.* 18, § 20. *Express Co.* v. *Kountze Brothers,* 8 *Wall. U. S.* 342.)

XI. There can be no doubt of the defendant's negligence in the management of these hides. They were thrown out on the ground, and not stacked up so as to keep them dry, and Moore swears that he might have had it done without trouble, but he didn't think of it. It had rained the night they were thrown out. 1. The plaintiff was not guilty of negligence. The evidence shows that the weather was very bad, and that the hides were as well cared for as could be done with the means at the plaintiff's command; that they were sorted, and the wettest put into the vats; and that the plaintiff tried to preserve them, all he could. The court will not interfere with the verdict of a jury unless there is such a preponderance of evidence against it, as to induce them to think that the verdict originated either in passion, prejudice or mistake. (*Murphy* v. *Boker,* 3 *Rob.* 1. *Dart* v. *Farmers' Bank,* 27 *Barb.* 337.)

XII. The damages were not excessive. The loss as sworn to by the plaintiff was $845, and none of this loss was chargeable upon him.

*G. M. Diven,* for the defendant.

I. The court erred in submitting to the jury the question whether in unloading the hides after the expiration of the time the plaintiff was permitted to leave them in the car, the defendant exercised that ordinary care and prudence in the care and treatment of them, which an ordinarily careful man would take of his own property; as well as in its refusal to charge that the defendant, after the time for their removal, was not required to unload them in a place protected from the storm, unless it had one provided. 1. Railway warehouses are for the convenience of the company in receiving, weighing, billing, loading and unloading goods. (*Redf. on Carriers,* § 110.)

Cook *v.* Erie Railway Company.

The refusal to charge, and the charge taken as a whole, amounts to this, that if the defendant had no depot or shed in or under which the hides could be unloaded secure from the storm, they were bound to make one. No case has gone so far. The case of *Kimball* v. *The Western Railroad Company*, (6 *Gray*, 542,) does not go that length. That was a case of shipment of lumber; the carelessness complained of was in unloading freight, and thus probably splitting, or in some way damaging it in the act of unloading. The case of *Ostrander* v. *Brown*, (15 *John.* 39,) was decided on the ground that delivery had not been completed. In *Moses* v. *Bost. and Maine R. R. Co.*, (32 *N. H.* 523,) the goods were not ready for delivery. In *Norway Plains Co.* v. *B. and M. R. R. Co.*, (1 *Gray*, 263,) and *Thomas* v. *Boston and Providence R. R. Co.*, (10 *Metc.* 472,) the defendants had warehouses. In *Smith* v. *Nashua and Lowell R. R. Co.*, (7 *Foster*, 86,) the defendant was held liable, not because bound to store, but because it did store. 2. There was no duty on the defendant to store the hides after the time given the plaintiff to remove them. (*Redf. on Carriers*, §§ 110, 111; *note* 15, § 120. 2 *Redf. on Railways*, 57, 3d ed. *Smith* v. *N. and L. Railway Co.*, 7 *Foster*, 86, 92–96. *Lewis* v. *Western R. R. Co.*, 11 *Metc.* 509. *N. A. and S. R. R. Co.* v. *Campbell*, 12 *Ind.* 55–60. *Shepherd* v. *Bristol and Exeter Railway Co.*, *Law. Rep.* 3 *Exch.* 189. *Labar* v. *Taber*, 35 *Barb.* 305.)

II. The plaintiff was fully apprised by notice to his agent that the hides would be unloaded in the most convenient place for the company, within twenty-four hours. Extending the time until Thursday did not waive the effect of the notice, but left it operative as notice that the hides would be thus unloaded on that day, and that the company would not be responsible for damage resulting therefrom. And for this, if no other reason, the court erred in refusing to charge that the defendant was not required to un-

load them in a place protected from the storm, unless it had such place prepared.

*By the Court,* JOHNSON, J.    The only questions made by the points of the defendant's counsel are those arising upon exceptions to the charge, and to the refusals to charge as requested.    The court charged the jury, 1st. That if the defendant caused the goods to be unloaded before the time it had fixed for having them unloaded and taken away, and they received injury in consequence of being thus unloaded, the defendant was liable as a common carrier for the damage resulting from the injury, whether it had been guilty of negligence or not.    And, 2d. That if the goods were not unloaded until after the expiration of the time fixed for unloading and taking them away, then the defendant was bound to exercise such care and prudence in unloading and caring for them afterwards, and before they were removed by the owner, as a person of ordinary prudence would take of his own property; and if the goods were injured in consequence of the defendant's neglect to exercise such care and prudence, it would be liable to respond in damages for such injury.    No exception was taken to the first proposition of the charge; but to the second proposition exception was taken, and the questions involved were presented in various forms, by requests, and exceptions to refusals to charge as requested. The jury rendered a verdict for the plaintiff, and of course found the facts embraced in one or the other of the propositions to be true.

The question therefore arises, whether the second proposition was erroneous in point of law.    I think both were entirely sound.    But assuming that the goods were not taken by the owner and consignee, within the time fixed for their removal, and that he either neglected or refused to take them within such reasonable time, what then became the duty of the defendant as a common

carrier? Clearly it had no right, in such a case, to cast the goods away, or to throw them out, and leave them where they would be open and exposed to injury from the elements. All the text books and authorities will be found to agree, that in such a case it is the duty of the carrier to take care of them for the owner. And if he neglects this duty of taking care of the goods, he will be held liable for the damages arising from a want of such care. (*Story on Bailments*, § 545. *Fisk* v. *Newton*, 1 *Denio*, 45. *Ostrander* v. *Brown*, 15 *John*. 43. *Goold* v. *Chapin*, 20 *N. Y.* 259. *S. C.* 10 *Barb.* 612.) This care must, unquestionably, be such at least as a prudent and careful man would take of his own property, of like description. A common carrier may discharge his liability entirely, by placing the goods in a warehouse at the place of destination, or by delivering them safely to some responsible third person, who will undertake to keep them safely, and deliver them to the consignee when called for, in case the consignee cannot be found, or he refuses or neglects to take them away within a reasonable time after tender or notice. The goods, confessedly, were not put into a warehouse, or left with a third person for the owner, but were thrown out of the car upon the ground, on the defendant's premises, and by the directions of its agent.

The plaintiff, who resided and had his place of business 20 miles from the defendant's depot, was then engaged in removing the goods with his own team, and could not, as it appears, conveniently take more than one load per day. In this aspect of the case, the question arose whether the defendant had taken proper care of the goods for the plaintiff, and whether they had been injured by reason of their not having been properly cared for. This was a question for the jury, and it was properly submitted to them. The verdict must be held to be correct, on whichever of the two grounds the jury placed it.

The request by the defendant's counsel, to the court, to

Cook *v.* Erie Railway Company.

charge that after the arrival of goods and notice to the consignee, and the lapse of a sufficient time to remove them, the carrier was not bound to store them, or unload them in a place protected from the storm, unless it had such place prepared, was properly refused. The very point was decided the other way in *Ostrander* v. *Brown,* (*supra.*) It is well settled that the duty of the carrier is not fully discharged in such a case, until he has taken care of the goods by placing them in a safe place, or in safe hands, for the consignee.

The court also properly refused to charge that the defendant was not bound to deliver goods to the consignee personally, or to give notice of the arrival thereof. The carrier must do one or the other of these things. The proposition embraced in the request was, that he was not bound to do either, but might be discharged from all liability without doing either. But the question did not arise in the case, as notice was given, and the consignee was engaged in taking the goods, when the defendant caused them to be unloaded. It was, therefore, a mere abstract proposition having no bearing upon the facts of the case; and if it had been sound, the refusal to charge was no error for which an exception will lie.

The request to charge that if the hides were not unloaded until Thursday afternoon the plaintiff could not recover, was also properly refused. The court had laid down, in the charge, the true rule of law on that subject. The court had charged the jury that if such was the case, then the question arose as to whether the defendant had taken proper care of the property.

The verdict as to damages seems to be fully warranted by the evidence. A new trial must, therefore, be denied, and judgment ordered on the verdict.

[FOURTH DEPARTMENT, GENERAL TERM, at Syracuse, November 14, 1870. *Mullin,* P. J., and *Johnson* and *Talcott,* Justices.]